## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Jacob William Johnson

v.                                    Case No. 20-cv-398-JL

Dr. Celia Englander et al.[1]

### REPORT AND RECOMMENDATION

Jacob William Johnson, a Florida prisoner currently being housed by the New Hampshire Department of Corrections ("DOC"), has filed a complaint (Doc. No. 1), alleging that while he was at the New Hampshire State Prison ("NHSP"), the defendants violated his federal constitutional rights, violated DOC policy, and are liable to him for negligence under State law. Mr. Johnson's complaint is before the court for preliminary review pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1).

---

[1]The defendants identified in the caption and/or body of the complaint (Doc. No. 1) are: New Hampshire State Prison ("NHSP") Drs. Celia Englander and Jeff Fetter; NHSP Nurse Coordinators Ryan Landry and Carlene Ferrier; NHSP Nurses John Lombard, Denise Downing, Brad Bowden, Olivia Gamelin, Donna Dufresne, Martha Barbosa, Karen Carr, Fallon Marchand, Ellen Halle-Cocoran, Nancy Clayman, Jane Dillon, Tina Crissfulli, Wendy Gioux, Ann Marie McCoole, and Veronica Paris; NHSP Corrections Officers Capt. Boynton, whose first name is unknown ("FNU"), Lt. FNU Lidick, and Sgt. FNU Turcotte; New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks; (former) DOC Commissioner William Wrenn; DOC Medical and Forensic Services Director Paula Mattis; DOC Attorney Lynmarie Cusack; NHSP Warden Michelle Edmark; (former) NHSP Warden Michael Zenk; NHSP employees, Douglas Laidlaw, and Barbara Slayton; and additional DOC employees not yet identified. All of the defendants are sued in both their individual and official capacities.

## Preliminary Review Standard

The court conducts a preliminary review of prisoner complaints seeking relief from government employees or entities. 28 U.S.C. § 1915A(a); LR 4.3(d)(1).  Pro se complaints are construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  In considering whether the complaint states a claim, the court construes reasonable inferences in the plaintiff's favor to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim'" upon which relief can be granted.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Claims may be dismissed, sua sponte, if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1); LR 4.3(d)(1)(A).

## Background and Claims

In the complaint, Mr. Johnson states that he has a medical condition he refers to as "a False Passage in [his] penis." Compl. at 14.  That condition requires, among other things, that Mr. Johnson use a catheter to empty his bladder and prevent urinary retention.  Mr. Johnson asserts that, if left unresolved, urinary retention can become acute and result in a medical emergency and/or a urinary tract infection ("UTI").

During the time period relevant to this matter, Mr. Johnson initially used a Foley catheter which had to be changed by medical personnel at least once every thirty days, according to Mr. Johnson's urologist's instructions.  At some point during his incarceration, Mr. Johnson stopped using a Foley catheter and instead used disposable catheters which allowed him to empty his bladder without medical assistance.  Mr. Johnson claims that according to his urologist, he needed six disposable catheters per day while at the NHSP.

In this action, Mr. Johnson alleges that the defendant NHSP medical staff members failed to properly and adequately treat his urinary tract issues and that defendants' actions and failures to act caused the worsening of his urinary tract conditions, infections, and extreme pain.  Mr. Johnson also alleges that, while he was at the NHSP, the defendants overmedicated him, made false statements in his prison medical record, denied him adequate mental health care, harassed and threatened him, interfered with his ability to file administrative grievances, retaliated against him for filing grievances, failed to redress his complaints, housed him in unsanitary conditions in the NHSP Secure Housing Unit ("SHU") while denying him cleaning supplies, failed to use proper employment practices, and violated prison policies.

Seeking damages, Mr. Johnson asserts the following claims against the defendants identified in each claim[2]:

1.    Defendants violated Mr. Johnson's Eighth Amendment right to receive adequate medical care for his serious medical needs related to his false passage and urinary tract problems and are liable to him for negligence or professional malpractice under State law, in that:

   a.    DOC/NHSP Dr. Celia Englander:

      i.    on March 3, 2017, failed to diagnose acute urinary retention and thus failed to address Mr. Johnson's pain, swollen stomach, and body aches, despite being advised that Mr. Johnson was unable to urinate and was suffering from urinary retention, and knowing of Mr. Johnson's underlying urinary tract conditions;

      ii.    on March 4, 2017, instructed a nurse not to send Mr. Johnson to the hospital despite knowing Mr. Johnson was in excruciating pain due to his urinary tract problems; and

      iii.    failed to instruct NHSP Nurses John Lombard, Denise Downing, and Wendy Gioux to provide Mr. Johnson with appropriate medical care when he was suffering from sharp pain due to acute urinary retention.

   b.    DOC/NHSP Dr. Jeffrey Fetter:

      i.    on August 21, 2017, inflicted trauma on Mr. Johnson's penis by making repeated unsuccessful attempts to catheterize Mr. Johnson, even after Mr. Johnson told Dr. Fetter

---

[2] In the complaint, Mr. Johnson makes references to the defendants violating his mother's rights and the rights of other inmates.  Because Mr. Johnson cannot represent anyone other than himself here, see LR 83.2(d) (in general parties who are not lawyers may appear "only on their own behalf"), Mr. Johnson's claims are construed to assert only violations of his own rights.  Any claims asserted on behalf of others are properly dismissed without prejudice to refiling by those individuals or their attorney.

that he "couldn't take it anymore," causing Mr. Johnson extreme pain, Compl. at 27;

ii.   denied Mr. Johnson care for a week for a UTI diagnosed subsequent to Dr. Fetter's August 21, 2017 failure to catheterize Mr. Johnson, despite being aware that Mr. Johnson was experiencing urinary retention and that his Foley catheter was blocked and leaking; and

iii. failed to change Mr. Johnson's Foley catheter every thirty days and failed to provide Mr. Johnson with sufficient disposable catheters, contrary to Mr. Johnson's urologist's instructions.

c.   DOC/NHSP Nurse Wendy Gioux:

i.   on March 2, 2017, failed to identify Mr. Johnson's urinary retention, resulting in a progression of his condition to acute urinary retention; and

ii.   refused, on more than one occasion, to catheterize Mr. Johnson when his Foley catheter was clogged, stating that "she didn't feel like it," Compl. at 26.

d.   DOC/NHSP Nurse John Lombard:

i.   on March 3, 2017, delayed evaluating Mr. Johnson when Mr. Johnson was experiencing a medical emergency due to acute urinary retention and, when he eventually saw Mr. Johnson, failed to catheterize him, failed to have Mr. Johnson seen at a hospital, and failed to use a bladder scanner to evaluate Mr. Johnson's condition; and

ii.   failed to follow prison policy requiring him to notify the NHSP Warden and DOC Commissioner that on March 3, 2017 a doctor instructed him to act contrary to his medical training and Mr. Johnson's medical needs.

e.   DOC/NHSP Nurse Denise Downing:

    i.   on March 4, 2017, disregarded Mr.
    Johnson's acute urinary retention and instead
    instructed Mr. Johnson to drink more fluids,
    failed to catheterize Mr. Johnson, disregarded
    the blood in Mr. Johnson's urine, and failed to
    obtain necessary additional medical assistance
    for Mr. Johnson, which caused Mr. Johnson to
    experience extreme pain; and

    ii.   failed to follow prison policy requiring
    her to notify appropriate prison officials that
    she was given "poor instructions" by a doctor
    which contradicted her assessment of Mr.
    Johnson and her medical training.

f.   DOC/NHSP Nurse Donna Dufresne;

    i.   on June 15, 2017, refused to change Mr.
    Johnson's Foley catheter, which had been placed
    on May 4, 2017, even though his catheter was
    supposed to be changed at least every thirty
    days, "despite obvious signs of [the catheter]
    not working," Compl. at 20-21, causing Mr.
    Johnson excruciating pain and necessitating
    that he be taken to the hospital for treatment;

    ii.   on August 21, 2017, when Mr. Johnson went
    to the medical department due to a problem with
    his Foley catheter, removed his catheter but
    was unable to insert a replacement catheter
    despite numerous attempts, causing Mr. Johnson
    "enormous pain," Compl. at 21; and

    iii.   on August 28, 2017, when Mr. Johnson had an
    infected penis which "needed to be cleaned
    constantly," Compl. at 21, denied him alcohol
    wipes and told him to use soap and water rather
    than alcohol wipes, contrary to Mr. Johnson's
    urologist's instruction that Mr. Johnson keep
    the area sanitized to prevent infection.

g.   DOC/NHSP Nurse Olivia Gamelin:

i.   on June 17, 2017, was unable to catheterize Mr. Johnson and sent him back to his unit, although he was in extreme pain due to urinary retention severe enough to constitute a medical emergency, without remedying his emergency condition or treating his pain;

ii.   on August 20, 2017, refused to properly care for Mr. Johnson and did not treat his pain, relating to what was subsequently diagnosed as a UTI, when Mr. Johnson went to the NHSP medical department because his Foley catheter was "clogging up really bad," Compl. at 19;

iii. refused to provide Mr. Johnson with an adequate number of disposable catheters May 5-7, 2018, which prevented Mr. Johnson from sufficiently emptying his bladder, in that she gave him only one for an entire day and night, contrary to the urologist's instructions that Mr. Johnson use six catheters per day; and

iv.   made him catheterize himself in unsanitary conditions when Mr. Johnson was housed in an unsanitary and filthy cell.

h.   DOC/NHSP Nurse Brad Bowden:

i.   on August 23, 2017, failed to treat Mr. Johnson when he sought medical care for UTI symptoms caused by his failing and leaking Foley catheter;

ii.   on August 26, 2017, denied Mr. Johnson adequate medical care for a UTI;

iii. on Saturday, March 10, 2018, gave Mr. Johnson ten disposable catheters and instructed him not to return to the medical department for more catheters until the following Saturday, stating that he didn't care that ten catheters would not last for the full week, contrary to Mr. Johnson's urologist's instructions that he use six catheters per day;

iv.  on May 3, 2018, denied Mr. Johnson
disposable catheters "despite [Mr. Johnson]
needing and begging for them," Compl. at 22;

v.   on September 10, 2018, refused to provide
Mr. Johnson with any care for Mr. Johnson's
serious medical needs; and

vi.  on September 14, 2018, refused to provide
Mr. Johnson with any care for Mr. Johnson's
serious medical needs.

i.   DOC/NHSP Nurse Tina Crissfulli, on August 26,
2017, when Mr. Johnson went to the NHSP medical
department for "an emergency with [his] Foley
catheter which was plugging up resulting in
leakage," Compl. at 25, would not let Mr. Johnson
demonstrate how his catheter was leaking or provide
adequate care for his urinary tract problem, which
was diagnosed the following day as a UTI.

j.   DOC/NHSP Nurse Veronica Paris:

i.   on August 28, 2017, failed to provide Mr.
Johnson with alcohol pads to clean himself,
despite Mr. Johnson's urologist's instruction
that Mr. Johnson keep the area sanitized to
prevent infection, when Mr. Johnson reported
that, due to his UTI, urine was leaking from
his Foley catheter; and

ii.  on September 5, 2017, did not help Mr.
Johnson when he went to the NHSP medical
department for assistance with his Foley
catheter, which was blocked, "causing voiding
issues," Compl. at 27, due to what was later
diagnosed as a UTI.

k.   DOC/NHSP Nurse Jane Dillon:

i.   on February 25, 2018, told Mr. Johnson to
catheterize himself less than two or three
times a day, contrary to his urologist's
instruction that he catheterize himself six
times per day, despite knowing that his bladder

retains urine and does not fully void, placing Mr. Johnson at risk of infection;

ii.  on May 5-7, 2018, would not allow Mr. Johnson more than one disposable catheter per day, contrary to his urologist's instruction that he use six disposable catheters per day, and knowing that his bladder retains urine and does not fully void; and

iii. on May 5-7, 2018, with an "enormous attitude," Compl. at 24, refused to catheterize Mr. Johnson with a Foley catheter when his bladder felt full, after he told her that he needed to have a Foley catheter.

l.   DOC/NHSP Nurse Ellen Halle-Cocoran, on March 14, 2018, gave Mr. Johnson only six disposable catheters to utilize for the rest of the week, contrary to his urologist's instruction that he use six disposable catheters per day.

m.   DOC/NHSP Nurse Nancy Clayman, on May 4, 2018, denied Mr. Johnson medical supplies he needed to care for his urinary tract problems, did not listen to Mr. Johnson's concerns regarding medical matters, and stated that Mr. Johnson had no rights.

n.   DOC/NHSP Nurse Ann McCoole disregarded Mr. Johnson's medical needs and interfered with all of Mr. Johnson's attempts to get necessary medical care and treatment.

o.   SHU Officers Capt. Boynton and Lt. Lidick refused to allow Mr. Johnson to try to obtain sufficient disposable catheters from the NHSP medical department.

p.   Unnamed NHSP Corrections Officers failed to get Mr. Johnson sufficient medical help for his serious medical needs on March 3-4, 2017, despite witnessing blood coming from Mr. Johnson's penis and Mr. Johnson begging them for help for hours.

q.    Unnamed DOC/NHSP medical personnel:

i.    failed to arrange all of the medical appointments necessary to treat Mr. Johnson's serious urinary tract issues, including an appointment with a neuro-urologist; and

ii.   allowed medical supplies Mr. Johnson needed to treat his urinary tract issues to run out on many occasions.

2.    Defendants violated Mr. Johnson's Eighth Amendment right to receive adequate medical care during his incarceration and are liable to him for negligence or professional malpractice under State law, in that:

a.    DOC/NHSP Dr. Celia Englander, on August 6, 7, and 30, 2018, failed to ensure that Mr. Johnson received the proper daily dose of his medications.

b.    DOC/NHSP Nurse Karen Carr, on August 6, 2018, overmedicated Mr. Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

c.    DOC/NHSP Nurse Fallon Marchand, on August 6, 2018, overmedicated Mr. Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

d.    DOC/NHSP Nurse Martha Barbosa, on August 7, 2018, overmedicated Mr. Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

e.    On August 30, 2018, DOC/NHSP Nurse Olivia Gamelin, knowing that Mr. Johnson had been overmedicated on August 6 and 7, 2018, overmedicated Mr. Johnson by causing hm to get an extra dose of his Oxcarbazepine Trilecto.

f.    SHU Officers Capt. Boynton, Lt. Lydick, and Sgt. Turcotte, on August 6 and 7, 2018, overmedicated Mr. Johnson by improperly administering his psychological and pain medications to him and causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

3.   Defendants violated Mr. Johnson's Eighth Amendment
right not to be subjected to cruel and unusual punishment,
or Fourteenth Amendment right to substantive due process,
by verbally abusing and harassing Mr. Johnson, in that:

   a.   DOC/NHSP Nurse Veronica Paris, on July 19, 2017,
   directed him to return to his housing unit with
   urine on his leg and pants and "refused to let [him]
   wash up so [he] wouldn't be humiliated," stating
   that "she didn't care and was content with [Mr.
   Johnson] returning with urine all over [him],"
   Compl. at 26, as a result of Mr. Johnson's
   malfunctioning catheter.

   b.   DOC/NHSP Nurse Brad Bowden:

      i.   on August 23, 2017, "harassed" and
      "intimidated" Mr. Johnson, accused him of lying
      about his symptoms, and "refused [him] medical
      care," Compl. at 21, when Mr. Johnson sought
      care for symptoms of a UTI;

      ii.  on August 26, 2017, harassed Mr. Johnson by
      "put[ting] his hands in [Mr. Johnson's] face,"
      Compl. at 21, and "accus[ing him] of having a
      twisted agenda," id. at 25;

      iii. on or after September 11, 2017,
      intimidated Mr. Johnson by "pushing [Mr.
      Johnson] in [his] wheelchair wildly and out of
      control, really fast and scary," Compl. at 22;

      iv.  on September 10, 2018, intimidated Mr.
      Johnson at the NHSP medical department;

      v.   on September 14, 2018, when Mr. Johnson
      went to the NHSP medical department with health
      concerns, said, sarcastically, "Oh, it's you
      again," Compl. at 22, and was dismissive of Mr.
      Johnson's health concerns; and

      vi.  on September 23, 2018, instructed Mr.
      Johnson not to bring used catheters to the
      medical department, but refused to put that
      instruction in writing, and accused Mr. Johnson
      of "playing games," Compl. at 22, when Mr.
      Johnson brought used disposable catheters to the

NHSP medical department to exchange for new ones, as he had been instructed to do by NHSP medical personnel.

c.   DOC/NHSP Nurse Tina Crissfulli:

i.   on August 26, 2017, "allowed Nurse Bowden to invade [Mr. Johnson's] personal space behind the curtain," and "nodded her head in agreement when Nurse Bowden accused [Mr.Johnson] of having a twisted agenda," Compl. at 25; and

ii.   on September 15, 2017, "participated in gossip with personnel from Manchester Urology," about Mr. Johnson's mother, Compl. at 25.

d.   DOC/NHSP Nurse Nancy Clayman:

i.   prior to May 4, 2018, told Mr. Johnson that she thinks he deserves a life sentence, despite not knowing anything about Mr. Johnson or his criminal history; and

ii.   on May 4, 2018, was rude and demeaning to Mr. Johnson, telling him to "be a man," to stop having his mother intervene in his medical care at the prison, and threatening to have his mother "fined and penalized" by the State, Compl. at 24.

e.   DOC/NHSP Nurse Olivia Gamelin "constantly tormented" Mr. Johnson, and on one occasion told Mr. Johnson that her boyfriend, DOC Officer Rubio, "'would pay [Mr. Johnson] a visit if [he] kept it up,'" telling Mr. Johnson "'we both know you don't want that.'"  Compl. at 19.

f.   DOC/NHSP employee Barbara Slayton was rude, disrespectful, and insincere in her interactions with Mr. Johnson.

g.   SHU Officer Sgt. Turcotte threatened to beat up Mr. Johnson.

    h.   SHU Officers Capt. Boynton and Lt. Lidick allowed Sgt. Turcotte to threaten to beat up Mr. Johnson and to work near where Mr. Johnson was housed in the SHU.

4.   Defendants violated Mr. Johnson's Eighth Amendment right to humane conditions of confinement, in that:

    a.   DOC/NHSP Nurse Jane Dillon, on May 5-7, 2018, refused to help Mr. Johnson obtain cleaning supplies, knowing that he was not able to get cleaning supplies from the SHU staff, despite Mr. Johnson telling her that he had a heightened risk of infection because of the filthy condition of his cell.

    b.   SHU Officers Capt. Boynton, Lt. Lidick, and Sgt. Turcotte:

        i.   on many occasions, allowed toilet water to flood Mr. Johnson's housing tier and allowed Mr. Johnson's cell to remain flooded for hours while denying him cleaning supplies, which deprived him of a sanitary place to catheterize himself and contaminated his disposable catheters; and

        ii.   failed to provide Mr. Johnson with access to daily showers and failed to ensure the showers on Mr. Johnson's housing unit were clean.

5.   SHU Officers Capt. Boynton, Lt. Lidick, and Sgt. Turcotte violated Mr. Johnson's First Amendment right to petition the government for a redress of grievances, and his Fourteenth Amendment right to due process, in that:

    a.   they interfered with administrative grievances Mr. Johnson sent to NHSP Warden Michelle Edmark and DOC Medical and Forensic Services Director Paula Mattis;

    b.   Lt. Lidick and Sgt. Turcotte denied Mr. Johnson inmate request slips and grievance forms on many occasions; and

    c.   Capt. Boynton and Lt. Lidick "were very persistent on [Mr. Johnson] not following through with a complaint on Sargent Turcotte," Compl at 29.

6.    SHU Officer Lt. Lidick violated Mr. Johnson's First Amendment right to petition the government for redress of his grievances when Lt. Lidick threatened to send Mr. Johnson, who is serving a Florida state sentence at the DOC, back to Florida for "filing grievances and making complaints," Compl. at 29, knowing that Mr. Johnson would likely be murdered if he were returned to Florida.

7.    DOC employee Barbara Slayton violated Mr. Johnson's Eighth Amendment right to receive adequate care and treatment for his serious mental health needs by failing to be concerned with his mental health.

8.    DOC/NHSP Nurse Wendy Gioux, violated Mr. Johnson's right to accurate medical records when, on June 8, 2017, she falsely reported in Mr. Johnson's prison medical record that she had offered him a chance to have his Foley catheter changed on that date when she had not.

9.    DOC employee Douglas Laidlaw is not qualified for his position.

10.   DOC Commissioner Helen Hanks is responsible for "having the office of the Deputy Director [v]acant," Compl. at 33

11.   DOC/NHSP medical personnel, DOC Medical and Forensic Services Director Paula Mattis, NHSP Warden Michelle Edmark, and DOC Commissioner Helen Hanks violated Mr. Johnson's Fourteenth Amendment right to due process, in that each of them failed to take corrective action concerning the constitutional violations and negligence Mr. Johnson alleges in Claims 1-8, in response to Mr. Johnson's administrative grievances concerning those matters.

12.   Supervisory officials DOC Commissioner Helen Hanks, former DOC Commissioner William Wrenn, DOC Director of Medical and Forensic Services Paula Mattis, DOC Attorney Lynmarie Cusack, NHSP Warden Michelle Edmark, former NHSP Warden Michael Zenk, and DOC/NHSP Nursing Coordinators Ryan Landry and Carlene Ferrier are liable for the alleged constitutional violations and torts Mr. Johnson alleges their subordinates effected in Claims 1-8, to the extent such conduct occurred during each particular supervisory official's tenure at the DOC and/or NHSP.

## Discussion

I.   Official Capacity Claims

Seeking money damages, Mr. Johnson has asserted each of his claims against each defendant in both their individual and official capacities.  When a state official is sued in his or her official capacity, the claim is treated as one brought against the State, even if the State is not a named party.  See Lewis v. Clarke, 137 S. Ct. 1285, 1290 (2017) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); Negrón-Almeda v. Santiago, 579 F.3d 45, 53 (1st Cir. 2009).  The Eleventh Amendment generally precludes such suits for damages, absent exceptions not applicable here.  See Davidson v. Howe, 749 F.3d 21, 28 (1st Cir. 2014).  Mr. Johnson's official capacity claims are thus precluded by the Eleventh Amendment, see Lewis, 137 S. Ct. at 1291, and the District Judge should dismiss all of the official capacity claims Mr. Johnson has asserted here.

II.  Individual Capacity Claims

   A.   First Amendment Claim to Be Served (Claim 6)

In Claim 6, Mr. Johnson alleges that the defendants identified therein retaliated against him for exercising his First Amendment rights.  To state a retaliation claim, a prisoner must allege: (1) that he engaged in conduct protected by the First Amendment; (2) that he suffered a non-de minimis

adverse action at the hands of the defendant prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

Mr. Johnson has pleaded a First Amendment retaliation claim upon which relief can be granted, arising from facts summarized in this Report and Recommendation ("R&R") as Claim 6.  In an Order issued this date, the court has directed service of Claim 6 upon SHU Officer Lt. Lidick in his individual capacity.

B.   Other Claims Served or to Be Amended – Legal Standards

1.   Eighth Amendment Health Care Claims

Mr. Johnson alleges defendants violated his Eighth Amendment rights by denying him adequate care for his serious medical and mental health needs.  To state an Eighth Amendment claim related to the sufficiency of medical or mental health care in prison, a plaintiff must allege that the defendants displayed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

This standard has both an objective and a subjective prong. Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018).  To satisfy the objective prong, a plaintiff must allege that he had a serious medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (internal quotation marks omitted).

Under the subjective prong, the plaintiff must allege facts showing that the defendant had "a sufficiently culpable state of mind." Zingg, 907 F.3d at 635.  A showing of deliberate indifference to a substantial risk of serious harm satisfies the subjective prong of an Eighth Amendment claim.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To establish deliberate indifference, an inmate must demonstrate that: defendants were aware of facts that gave rise to an inference that a substantial risk of serious harm existed; defendants drew the inference that such a risk existed; and defendants, by act or omission, did not take reasonable steps to reduce or eliminate the risk.  See id. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018).

"[W]anton" or criminal recklessness in the medical treatment provided will suffice to demonstrate deliberate indifference, where the plaintiff has shown that the defendants had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Zingg, 907 F.3d at 635 (internal quotation marks and citation omitted).  Such a showing may be made by demonstrating that a defendant provided medical care that was

17

"so inadequate as to shock the conscience." Feeney v. Corr.
Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) (internal
quotation marks omitted).  In such circumstances, the care
received must be "so clearly inadequate as to amount to a
refusal to provide essential care." Torraco v. Maloney, 923
F.2d 231, 234 (1st Cir. 1991) (internal quotation marks
omitted).

However, not every harm experienced by a prisoner in
relation to medical treatment rises to the level of an Eighth
Amendment violation.  See Snell v. Neville, 998 F.3d 474, 494-95
(1st Cir. 2021).  Prisons are not required to provide ideal
medical care, or a prisoner's preferred medical treatment.  See
id.  Further, a showing of negligence is not enough to state an
Eighth Amendment claim.  See id. at 496-97; Ruiz–Rosa v. Rullán,
485 F.3d 150, 156 (1st Cir. 2007) ("substandard care,
malpractice, negligence, inadvertent failure to provide care,
and disagreement as to the appropriate course of treatment are
all insufficient to prove a constitutional violation" (internal
citations and quotation marks omitted)).

2.   Negligence and Professional Malpractice

Mr. Johnson has generally alleged that defendants are
liable to him for negligence or professional malpractice.  To
state a negligence claim, "the plaintiff must plead facts

18

showing that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injuries." Doe v. Trs. of Dartmouth Coll., No. 21-cv-085-JD, 2021 U.S. Dist. LEXIS 127228, at *30, 2021 WL 2857518, at *10 (D.N.H. July 8, 2021) (citing Coan v. N.H. Dep't of Env't Servs., 161 N.H. 1, 7, 8 A.3d 109, 115 (2010)). Under state law, a plaintiff states a viable claim of medical malpractice by alleging that he suffered injuries proximately caused by a health care provider's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered. See Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing N.H. Rev. Stat. Ann. § 507-E:2).

C.   Medical Care - Federal and State Claims to Be Served

Mr. Johnson has sufficiently stated the following Eighth Amendment medical and mental health care claims, as identified in R&R, to allow them to proceed against the defendants identified in each claim, in their individual capacities: 1(a)(i)-(iii), 1(b)(i)-(iii), 1(c)(i)-(ii), 1(d)(i), 1(e)(i), 1(f)(i)-(iii), 1(g)(i)-(iv), 1(h)(i)-(iv), 1(i), 1(j)(i)-(ii), 1(k)(i)-(iii), 1(l), 1(m), 1(o), 2(a)-(f), 4(a), and 4(b)(i). Those claims may also proceed against the same defendants as claims for damages for negligence or professional malpractice

19

under New Hampshire law.  In an Order issued simultaneously with this R&R, the court directs service of those Eighth Amendment claims and the related state tort claims.

D.    Medical/Mental Health Care Claims to Be Amended

1.    Claims 1(h)(v), 1(h)(vi), 1(n), 7

Mr. Johnson alleges generally that Nurse Bowden (Claims 1(h)(v)-(vi)) and Nurse McCoole (Claim 1(n)) violated his Eighth Amendment rights and are liable to him for negligence or professional malpractice under state law, by disregarding his serious medical needs and/or interfering with his necessary medical treatment.  In Claim 7, Mr. Johnson alleges generally that Ms. Slayton violated his Eighth Amendment right to receive adequate treatment for his serious mental health needs.

Mr. Johnson's allegations summarized here as Claims 1(h)(v)-(vi), 1(n), and 7 are conclusory and do not presently warrant service upon defendants.  But in an abundance of caution, considering Mr. Johnson's pro se status, the court has granted Mr. Johnson the opportunity to amend those claims, requiring him, in the Order issued this date, to file an amended pleading stating, with specificity, what Nurse Bowden, Nurse McCoole, and Ms. Slayton did, or failed to do, which violated his Eighth Amendment rights and/or rendered them liable to him for negligence or professional malpractice.

20

2.   Claims 1(p) and 1(q)(i)-(ii)

In the claims identified here as Claims 1(p) and 1(q)(i)-
(ii), Mr. Johnson has failed to name any defendant whose acts or
omissions manifested deliberate indifference to Mr. Johnson's
serious medical needs.  In the Order issued this date, Mr.
Johnson is granted leave to file an amended pleading, naming
those defendants and stating, with specificity, what each
defendant did or failed to do which violated his rights under
the Eighth Amendment or which constituted negligence or
professional malpractice.[3]

D.   Claims to Be Dismissed

1.   False Notation in Medical Record (Claim 8)

In Claim 8, Mr. Johnson states that on one occasion, Nurse
Gioux placed false information in his medical record, a notation
that she had offered him the opportunity to have his catheter
changed when, Mr. Johnson alleges, she had not.  Mr. Johnson
does not state that he was denied necessary medical care, or
otherwise harmed, as a result of Nurse Gioux's alleged false
notation.  Further, one false statement in Mr. Johnson's medical

---

[3] To obtain the names of the appropriate defendants, Mr.
Johnson may serve interrogatories and/or requests for production
of documents on the served defendants, as explained in the Order
issued this date.

record regarding an offer to change his catheter on one occasion, absent any facts showing any resulting adverse consequence does not rise to the level of a constitutional violation.  The District Judge, therefore, should dismiss Claim 8 for failure to state a claim.

### 2.   Threats and Harassment (Claims 3(a)-(h))

In the claims identified here as Claims 3(a)-(h), Mr. Johnson asserts that the defendants identified in those claims threatened and/or verbally harassed him at the NHSP.  Mr. Johnson claims that the verbal harassment and threats violated his rights under the Eighth Amendment and/or the Fourteenth Amendment.

Allegations of verbal threats and harassment, standing alone, are insufficient to assert any constitutional violation. See Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999) (without more, verbal harassment by officers does not violate inmate's constitutional rights) (collecting cases); see also DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Although inappropriate and unprofessional, the threats and

verbal harassment alleged in the Complaint do not state a claim upon which relief can be granted under 42 U.S.C. § 1983.

Mr. Johnson further alleges that some of the harassment involved touching and scaring him.  His allegations in that regard, as summarized in Claims 3(a)-(h), without more, do not state claims upon which relief can be granted.  Cf. Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("not every malevolent touch by a prison guard gives rise to a federal cause of action"; and "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim" (internal quotation marks omitted) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).  He has not pleaded the type of facts that could be deemed to convert the apparently unprofessional and indefensible types of harassment he alleges he suffered into the type of malicious or sadistic infliction of excessive force or the type of "credible threat to kill, or to inflict any other physical injury" that could violate the Eighth Amendment.  Dobbey v. Ill. Dep't of Corr., 574 F.3d 443, 446 (7th Cir. 2009).  Accordingly, the District Judge should dismiss Claims 3(a)-(h).

### 3.    Shower Claims (Claim 4(b)(ii))

In Claim 4(b)(ii), Mr. Johnson asserts that the defendant SHU officers identified therein subjected him to unsanitary

conditions of confinement, in violation of his Eighth Amendment rights.  Specifically, Mr. Johnson asserts that the defendants failed to provide him with daily showers while he was housed in the SHU and failed to keep the showers consistently clean.

To establish a constitutional violation under the Eighth Amendment based on inhumane conditions of confinement, the "claim must meet both objective and subjective criteria." Surprenant v. Rivas, 424 F.3d 5, 18-19 (1st Cir. 2005) (citing Farmer, 511 U.S. at 834).  Objectively, the conditions of confinement must deny the inmate "the minimal measure of necessities required for civilized living."  Id.  Subjectively, the defendant must be "deliberately indifferent" to the prisoner's "health or safety."  Surprenant, 424 F.3d at 18-19 (citing Farmer, 511 U.S. at 836-37.

The allegations in Mr. Johnson's complaint do not show that he was at risk of serious harm due to the lack of daily showers and a consistently clean shower.  Further, no non-conclusory facts in the complaint suggest that the defendants were aware of and disregarded a risk to Mr. Johnson's health and safety arising from his allegations concerning the SHU showers.  Mr. Johnson has thus failed to state an Eighth Amendment claim based on the SHU showers, and, accordingly, the District Judge should dismiss Claim 4(b)(ii).

4.   Prison Policy Violations

a.   Fourteenth Amendment Due Process Claims

Mr. Johnson has alleged that the defendants violated prison policy, in violation of his Fourteenth Amendment due process rights, with respect to the medical care that he sought for treatment of his urinary tract issues.  To establish that his due process rights have been violated, a plaintiff must demonstrate that he has suffered a deprivation of a protected interest in life, liberty, or property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  In general, a prisoner has no freestanding liberty interest in having prison officials follow prison policies.  See McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201 at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  Without more, the facts alleged by Mr. Johnson do not state claims upon which relief can be granted, for violations of his right to due process under the Fourteenth Amendment, with respect to his claims relating to the medical care he received for his urinary tract issues.

b.   Eighth Amendment (Claim 1(d)(ii), 1(e)(ii))

In Claims 1(d)(ii) and 1(e)(ii), Mr. Johnson claims that nurses violated his Eighth Amendment rights by failing to follow

prison policies requiring them to notify the NHSP Warden and DOC
Commissioner that physicians had given them instructions
inconsistent with their training and experience.  Mr. Johnson
has not pleaded facts sufficient to show, however, that the
nurses' failure to make such reports of poor or mistaken
instructions, per se, was more than mere negligence on the part
of those nurses, or that they were aware that their failure to
make such reports, per se, subjected Mr. Johnson to a
substantial risk of serious harm.  Accordingly, the policy
violations or reporting lapses at issue do not state claims that
those nurses violated Mr. Johnson's federal rights, and for that
reason, the District Judge should dismiss the claims summarized
herein as Claims 1(d)(ii) and 1(e)(ii), for failure to state a
claim upon which relief can be granted.


     5.   Administrative Grievances (Claims 5(a)-(c), 11)

     In the claims identified here as Claims 5(a)-(c), Mr.
Johnson asserts that the defendants named in those claims
violated his Fourteenth Amendment right to due process by
engaging in conduct which interfered with his ability to file
administrative grievances at the NHSP.  "There is no
constitutionally protected due process right to unfettered
access to prison grievance procedures." Walker v. Mich. Dep't
of Corr., 128 F. App'x 441, 445 (6th Cir. 2005).  Accordingly,

Mr. Johnson is not entitled to relief on his claim that the defendants interfered with his access to grievance procedures, and the District Judge should dismiss Claims 5(a)-(c).

In Claim 11, Mr. Johnson alleges that the defendants named therein violated his Fourteenth Amendment right to due process, and are liable to him under state law for negligence, in that they denied him relief in response to many of the grievances he filed at the NHSP. "[T]he failure to respond to a grievance to the satisfaction of the inmate does not, standing alone implicate a liberty interest." Spencer v. Bender, Civil Action No. 08-11528-RGS, 2010 U.S. Dist. LEXIS 23249, at *26, 2010 WL 972207, at *9 (D. Mass. Mar. 11, 2010). As the denial of his administrative complaints did not implicate any liberty interest, Mr. Johnson has no Fourteenth Amendment due process right to have his grievances granted. The district judge therefore should dismiss Claim 11 to the extent it asserts a Fourteenth Amendment violation and decline to exercise its supplemental jurisdiction to the extent it asserts a negligence claim, as no federal claim upon which relief can be granted is stated against any of the defendants named in Claim 11. See 28 U.S.C. § 1367(c).

### 6.   Claims 9 and 10

In the allegations summarized here as Claim 9, Mr. Johnson complains that a DOC and/or NHSP employee, Douglas Laidlaw, does not have the qualifications required to perform his job.  Mr. Johnson has identified neither Mr. Laidlaw's position nor what qualifications Mr. Laidlaw lacks.  And in Claim 10, Mr. Johnson asserts that Commissioner Hanks is responsible for leaving the job of "Deputy Director" vacant.  Mr. Johnson does not assert that he was injured in any way with regard to Mr. Laidlaw's lack of qualifications or the vacant Deputy Director position, and his claims in that regard do not otherwise appear to state any claim upon which relief might be granted.  Accordingly, the District Judge should dismiss Claims 9 and 10.


### 7.   Supervisory Liability (Claim 12)

In Claim 12, Mr. Johnson alleges that the supervisory DOC and NHSP officials identified therein are responsible for the constitutional violations arising from the conduct of their subordinates underlying Claims 1-8.  Generally, a supervisory official is liable for a constitutional violation under § 1983 only if his or her own actions or inactions caused the violation, or if his or her conduct "led inexorably to" a subordinate's violation of the plaintiff's constitutional

rights.  Penate v. Hanchett, 944 F.3d 358, 367 (1st Cir. 2019);

see also Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021).

Mr. Johnson does not allege that any supervisory officials
were engaged in conduct which "led inexorably to" their
subordinates' conduct underlying Claims 1-8, which he alleges
violated his constitutional rights.  Accordingly, the District
Judge should dismiss Claim 12 and should drop all of the
defendants identified therein.


## Conclusion

For the foregoing reasons, the district judge should:

1.  Dismiss all of Mr. Johnson's claims asserted on
behalf of his mother or other prisoners, without prejudice;

2.  Dismiss all of Mr. Johnson's official capacity
claims asserted against any defendant in this case;

3.  Dismiss all of Mr. Johnson's Fourteenth Amendment
due process claims arising from alleged violations of
prison policies relating to medical care for Mr. Johnson's
urinary tract issues, for failure to state a claim upon
which relief can be granted;

4.  Dismiss Claims 1(d)(ii), 1(e)(ii), 3(a)-(h),
4(b)(ii), 5(a)-(c), and 8-12, for failure to state a claim
upon which relief can be granted; and

5.  Dismiss the following defendants from this
action, as no claim upon which relief can be granted has
been stated against them: DOC Commissioner Helen Hanks;
(former) DOC Commissioner William Wrenn; DOC Medical and
Forensic Services Director Paula Mattis; DOC Attorney
Lynmarie Cusack; NHSP Warden Michelle Edmark; (former) NHSP
Warden Michael Zenk; NHSP employee Douglas Laidlaw; and
DOC/NHSP Nurse Coordinators Ryan Landry and Carlene
Ferrier.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

December 15, 2021

cc:  Jacob William Johnson, pro se