UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jacob William Johnson

    v.                                          Civil No. 20-cv-398-SE
                                                  Opinion No. 2022 DNH 113

Celia Englander et al.

ORDER

In this action, the plaintiff Jacob William Johnson filed a complaint[1] pursuant to 42 U.S.C. § 1983, asserting claims against a number of current and former employees of the New Hampshire Department of Corrections ("DOC"), alleging that each of the defendants violated his federal constitutional rights, and rights under state law, during his incarceration at the New Hampshire State Prison for Men ("NHSP").[2] Two defendants, Wendy

---

[1] The "complaint" is comprised of the original complaint (doc. no. 1) and Johnson's amendments and addenda thereto (doc. nos. 11-13, 16, 39-45, 51, 54-59, 63), some of which were filed after the pending motions to dismiss. See Endorsed Order, dated Apr. 14, 2022 (Johnstone, J.); Endorsed Order, dated Mar. 15, 2022 (Johnstone, J.) (granting plaintiff's motions to amend).

[2] At the time of the events underlying this action, Johnson was a Florida Department of Corrections ("FDOC") prisoner serving his sentence at the NHSP. The FDOC website indicates that Johnson was placed on supervised release, in Florida, on April 27, 2022. See FDOC Supervised Population Information Search, www.dc.state.fl.us/offenderSEarch/detail.aspx?Page=Detail&DCNumber=Q61472&TypeSearch=AO, last visited Sept. 1, 2022.

Giroux[3] and John Lombard, both of whom Johnson describes as registered nurses, have filed motions to dismiss certain claims Johnson has asserted against them under Federal Rule of Civil Procedure 12(b)(6). Doc. no. 33 (Giroux's motion); Doc. no. 34 (Lombard's motion). For the reasons that follow, the court denies both motions.

Background

Johnson has a urological condition known as a "false passage" in his penis. Doc. no. 1 at 14 (capitalization omitted). As a result of that condition, "[t]he primary passage in [his] urethra is prone to frequent blockage which requires that [he] use a catheter to empty [his] bladder." Id. During the times relevant to the claims addressed here, Johnson was using a Foley catheter pursuant to the prescription of a urologist, which had to be changed at least every thirty days by the medical staff at the NHSP. See id. Improper administration of his Foley catheter "can lead to acute urinary retention (overfull bladder) and urinary tract infection." Id. Johnson asserts that the incidents underlying the claims at issue here "are examples of occurrences where

---

[3] Johnson apparently misspelled Giroux's last name in his complaint; the court spells her name as it is spelled in her motion to dismiss.

2

denial of medical care caused pain from acute urinary retention and urinary tract infection." Id.

Johnson filed, as an addendum to his complaint, a February 17, 2017 DOC "Off-Site/Consult Order." Doc. no. 41 at 2 ("OS/CO").[4] That document indicates that on February 17, 2017, Dr. Celia Englander, a physician treating Johnson at the NHSP, directed that an appointment be scheduled for Johnson at Manchester Urology Association for a urodynamic study "as recommended by Urology as evaluation of severe urinary frequency."[5] Id. According to the OS/CO, Dr. Englander requested that the appointment with Manchester Urology be scheduled for March 1, 2017. See id. The record before the court does not reveal whether that appointment occurred on that date.

Johnson asserts that on March 2, 2017, he was in urinary retention and therefore unable to empty his bladder. See doc. no. 1 at 26. Johnson states that he saw Giroux about his

---

[4] The instant motions to dismiss were filed February 16, 2022. Johnson filed the OS/CO on February 24, 2022. That document, therefore, was not available to the defendants prior to their filing of these motions. Neither defendant has supplemented their motion to dismiss in response to the OS/CO.

[5] "Urodynamic testing is any procedure that looks at how well parts of the lower urinary tract – the bladder, sphincters, and urethra – work to store and release urine." www.niddk.nih.gov/health-oinformation/diagnostic-tests/urodynamic-testing, last visited Sept. 2, 2022.

3

urinary retention that day, but she failed to identify his urinary retention. See id. As a result, that condition progressed to a painful acute urinary retention. See id.

Johnson alleges that on other unspecified dates, his Foley catheter clogged and needed to be changed.[6] See id. On those occasions, when Johnson asked Giroux to change his catheter and recatheterize him, "[s]he rudely told [him] she didn't feel like it and refused to help [him]." Id. Johnson further asserts that Giroux "is responsible for many situations that ultimately neglected [him] due to incompetence." Id.

According to his complaint, on March 3, 2017, Johnson sought emergency help from Lombard because he was "experiencing acute urinary retention." Id. at 17. Lombard initially refused to evaluate Johnson. See id. Johnson states that Lombard eventually saw him, but that Lombard "wasn't sincere about helping [him] get catheterized" or helping him get to a hospital or other outside medical facility for emergency care. Id. Johnson further alleges that Lombard did not use a bladder

---

[6] Although Johnson provides no specific dates on which he saw Giroux for assistance with his Foley catheter, he does report that he had the Foley catheter for approximately six months after he arrived at the NHSP and thereafter was given single-use catheters that he could use himself. See doc. no. 1 at 14.

scanner to determine the source of Johnson's urological symptoms. See id.

## II. Claims Asserted Against the Defendants

Magistrate Judge Andrea K. Johnstone conducted a preliminary review of the original, pre-supplemented version of the complaint in this matter (doc. no. 1), see 28 U.S.C. § 1915(a) and LR 4.3(d)(1), and identified the following three claims, as relevant to the pending motions, as having been asserted against Giroux and Lombard in their individual capacities[7]:

> 1. Defendants violated Mr. Johnson's Eighth Amendment right to receive adequate medical care for his serious medical needs related to his false passage and urinary tract problems and are liable to him for negligence or professional malpractice under state law, in that:
>
>   . . .
>
>   (c) DOC/NHSP Nurse Wendy Gi[r]oux:
>
>     i. on March 2, 2017, failed to identify Mr. Johnson's urinary retention, resulting in a progression of his condition to acute urinary retention; and

---

[7] In addition to the claims set forth here, Johnson asserted a claim, identified as Claim 8, against Giroux, and a claim, identified as Claim 1(d)(ii), against Lombard. In her Report and Recommendation dated December 15, 2021, Judge Johnstone recommended that both of those claims be dismissed. Doc. no. 7 at 5, 14, 21-22, 25-26. Judge Johnstone also recommended dismissal of all of Johnson's claims asserted against any defendant in his or her official capacity. Id. at 15.

5

> > ii. refused, on more than one occasion, to catheterize Mr. Johnson when his Foley catheter was clogged, stating that "she didn't feel like it," Compl. at 26.
>
> (d) DOC/NHSP Nurse John Lombard:
>
> > i. on March 3, 2017, delayed evaluating Mr. Johnson when Mr. Johnson was experiencing a medical emergency due to acute urinary retention and, when he eventually saw Mr. Johnson, failed to catheterize him, failed to have Mr. Johnson seen at a hospital, and failed to use a bladder scanner to evaluate Mr. Johnson's condition[.]

Doc. no. 7 at 5. Judge Johnstone directed service of Claims 1(c)(i)-(ii) upon Giroux and Claim 1(d)(1) upon Lombard. Doc. no. 8. Giroux and Lombard each filed a motion to dismiss pertaining to the above-listed claims.

## Discussion

I. Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" with "enough factual detail to make the asserted claim 'plausible on its face.'" Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 33 (1st Cir. 2022) (quoting, inter alia, Fed. R. Civ. P. 8(a)(2) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court's assessment of plausibility

6

"is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 70 (1st Cir. 2021) (quoting Iqbal, 556 U.S. at 679). To make the plausibility determination, the court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the [plaintiff]'s favor," but "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Legal Sea Foods, 36 F.4th at 33 (quotations omitted). Because Johnson is representing himself in this matter, the court construes his pleadings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

"Affirmative defenses may be raised on a motion to dismiss under Rule 12(b)(6) so long as the facts establishing the defense are clear from the face of the complaint as supplemented by matters fairly incorporated within it and matters susceptible to judicial notice." Monsarrat v. Newman, 28 F.4th 314, 318 (1st Cir. 2022) (quotation omitted). "Dismissal based on an affirmative defense is appropriate only where there is no doubt that the plaintiff's claim is barred by the raised defense." Id. (quotation omitted).

II. Statute of Limitations-Claims 1(c)(i) and 1(d)(i)

    A. Length, Accrual, and Tolling of Limitations Period

In general, claims arising under § 1983 borrow the statute of limitations applicable to personal injury claims in the state in which the events underlying the claims occurred. See Fincher v. Town of Brookline, 26 F.4th 479, 485-86 (1st Cir. 2022). In New Hampshire, such claims are subject to a three-year limitations period. See McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011) (citing N.H. Rev. Stat. Ann. § 508:4, I). While state law controls the length of the limitation period, "federal law controls when the cause of action accrues." Fincher, 26 F.4th at 486. Ordinarily, a § 1983 claim accrues "when a plaintiff knows or has reason to know of his injury." Id. (quotation omitted). Additionally, when the court applies the limitations period dictated by state law to a § 1983 claim, the court also borrows the state's rules for tolling the limitations period. See Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020).

    B. Analysis

        1. Accrual Date and Filing Deadline

In this case, Johnson had reason to know of the injuries he alleges resulted from the incidents underlying Claims 1(c)(i) and 1(d)(i) on the dates they occurred, March 2 and 3, 2017.

8

Therefore, those claims accrued on those dates. Absent equitable tolling, Johnson's deadline to file Claim 1(c)(i) against Giroux was March 2, 2020, and his deadline to file Claim 1(d)(i) against Lombard was March 3, 2020.

The defendants each contend that Johnson's complaint should be deemed filed on the date that it was received by the court, March 31, 2020, which is almost thirty days after the limitations period expired as to Claims 1(c)(i) and 1(d)(i). However, in a § 1983 action, the "mailbox rule" provides that a pro se prisoner's court filing is deemed filed on the date he delivered it to prison authorities to be mailed. See Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002). Accordingly, for the purposes of ruling on the instant motions, the court deems Johnson's original complaint to have been filed on the date it was signed, March 19, 2020,[8] which still exceeds the three-year limitations period ordinarily applicable to a § 1983 claim by seventeen days. If, however, New Hampshire law could equitably toll his claims at issue here for at least seventeen days, Johnson's claims would not be time-barred.

---

[8] Each defendant's motion states that the original complaint was signed on March 17, 2020. To the court's eye, the original complaint was signed on March 19, 2020. Doc. no. 1 at 11. The distinction does not affect the court's ruling on these motions.

9

2. <u>Equitable Tolling</u>

In New Hampshire, the limitations period for a claim is tolled "during a pending administrative proceeding if that proceeding is a prerequisite to a civil action." Chase Home for Child. v. N.H. Div. Child., Youth & Fams., 162 N.H. 720, 729 (2011). Under the Prison Litigation Reform Act ("PLRA"), a prisoner is required to exhaust all the administrative remedies available to him with regard to a particular incident before filing a § 1983 action concerning that incident. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Ross v. Blake, 578 U.S. 632, 639 (2016) (exhaustion of administrative grievances is mandatory under the PLRA); Porter v. Nussle, 534 U.S. 516, 524, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life").

The administrative grievance procedures in effect at the DOC in March of 2017 were set forth in Policy and Procedure Directive ("PPD") 1.16 (eff. May 1, 2016).[9] PPD 1.16 described a

---

[9] The DOC's PPDs were renumbered sometime after March of 2017.

10

three-tiered grievance system in which a DOC prisoner is afforded thirty days from the date of an incident to file his first-level complaint concerning that incident. See PPD 1.16(IV)(A)(1). Prison officials then had up to thirty days to respond to that complaint. See id., ¶ (A)(5). If that complaint were denied, the prisoner had thirty days from the date of denial to file a second-level grievance with the warden of his facility, see id., ¶ (B)(1), who then had up to forty-five days to respond, see id., ¶ (B)(5). If the warden denied the prisoner's second-level grievance, the prisoner had thirty days from the date of that denial to file his third-level grievance to the DOC Commissioner, see id., ¶ (C)(1), who then had up to forty-five days to respond, see id., ¶ (C)(5).

Here, Johnson has indicated in his complaint that he fully exhausted the claims asserted in this action—an assertion that neither defendant challenges. Complete exhaustion of the DOC's grievance procedures was a prerequisite to bringing this suit, and therefore, the three-year limitations period applicable to this lawsuit may be equitably tolled for the period of time during which Johnson was exhausting the DOC's administrative remedies, a process which, as described above, could have taken significantly longer than seventeen days. Because Johnson's exhaustion of the DOC's administrative grievances could well have been pending for more than seventeen days, the court finds

11

that Johnson may be entitled to equitable tolling of the three-year limitations period applicable here, such that Claims 1(c)(i) and 1(d)(i) would be deemed timely filed. The defendants, therefore, have failed to demonstrate, as to Claims 1(c)(i) and 1(d)(i), that there is "no doubt that the plaintiff's claim is barred" by the statute of limitations. Monsarrat, 28 F.4th at 318 (quotation omitted). Accordingly, Giroux's motion to dismiss Claim 1(c)(i) is denied, and Lombard's motion to dismiss Claim 1(d)(i) is denied. The court now turns to the only remaining claim at issue—Claim 1(c)(ii) against Giroux—which Giroux seeks to have dismissed for failure to state a claim for relief under the Eighth Amendment.

III. Sufficiency of Complaint's Allegations–Claim 1(c)(ii)

    A.    Eighth Amendment Standard

To state an Eighth Amendment claim upon which relief may be granted based upon a prisoner's alleged denial of adequate medical care, the plaintiff must assert facts to demonstrate that he has a serious medical need requiring treatment, and that he was denied such treatment by a defendant acting with deliberate indifference to his serious medical need. See Abernathy v. Anderson, 984 F.3d 1, 3 (1st Cir. 2020). A serious medical need is one that is diagnosed by a physician as mandating treatment, or that is "so obvious that a lay person

12

would easily recognize the necessity for a doctor's attention." Snell v. Nelville, 998 F.3d 474, 495 (1st Cir. 2021) (quotation omitted).

"Deliberate indifference appears when defendants had a 'sufficiently culpable state of mind' by ignoring (or worsening) the inmate's serious medical need." Id. at 497 (quoting Farmer v. Brennan, 511 U.S. 825 834 (1994)). Deliberate indifference is "more than negligence, . . . yet it need not be intentional harm. The defendants must have known of the risk of harm to the plaintiff and disregarded it." Id. (quotation and citation omitted).

### B. Analysis

#### 1. Serious Medical Need and Deliberate Indifference

In Claim 1(c)(ii), Johnson alleges that Giroux failed to provide him with adequate medical care for a serious medical need when, on more than one occasion, she refused to catheterize Johnson when his Foley catheter was clogged, and that she did so with deliberate indifference to his serious medical need. Giroux asks the court to dismiss that claim "because the plaintiff failed to allege a cognizable injury, failed to identify when the alleged events occurred, and failed to allege that Nurse Giroux acted with deliberate indifference to his medical

13

needs."[10] Doc. no. 33 at 2. Giroux also asserts that Claim 1(c)(ii) is subject to dismissal because Johnson has failed to assert facts which demonstrate either that a urologist diagnosed his medical condition, or that Giroux is herself a urologist or otherwise has "the license or training to engage in the practice of urology" such that she should be considered able to diagnose Johnson's medical condition. Id. at 5.

In his complaint, Johnson asserted that during the time period relevant to Claim 1(c)(ii), he had a urological condition which was known to the NHSP medical department, and which required that he use a Foley catheter to empty his bladder, a fact also known to the NHSP medical department. He further asserted that if he was not properly catheterized, he could, and did, develop acute urinary retention and/or a urinary tract infection requiring emergency care. Johnson has also, in the OS/CO, demonstrated that he was being treated by an outside urologist as well as a DOC physician for that condition. Johnson's complaint is also rife with assertions that in the time he spent at the NHSP during which he had a Foley catheter, numerous nurses attended to his catheterization needs.

---

[10] Giroux states, without any developed argument, that Johnson's failure to specify the dates on which Giroux refused to catheterize him is fatal to his claim. The court disagrees that Johnson has to do so here to satisfy the relevant pleading standard.

14

Johnson further alleges that while he was catheterized, his catheter sometimes clogged, and that on at least two of those occasions, he sought assistance from Giroux to resolve that problem by catheterizing him. The court can reasonably infer that Giroux, as a medical care provider at the NHSP, would have been aware of Johnson's medical conditions and would have had access to his NHSP medical records, which showed that he was being treated for urological conditions diagnosed by a urologist and a DOC physician, at least in part, with the use of a Foley catheter. Even if she was not specifically aware of Johnson's prior treatment, the fact that he was catheterized allows the court to reasonably infer that, upon presentation of his situation to Giroux and report to her that his catheter was clogged, that, as a registered nurse, Giroux would be aware that a clogged Foley catheter would constitute a serious medical need.

With regard to the issue of deliberate indifference, Johnson alleges that, when he went to Giroux and made her aware that his Foley catheter was clogged by asking her to help him resolve that issue, she refused to assist him. Johnson also alleges that on those occasions, Giroux's stated reason for refusing to change his catheter was that she "didn't feel like it." Doc. no. 1 at 26. Such statements are sufficient, at this stage of the case, to support a reasonable inference that

15

Giroux's refusal to change Johnson's catheter was deliberately indifferent to his serious medical need.

Therefore, the court finds that Johnson's Claim 1(c)(ii) plausibly states an Eighth Amendment claim upon which relief may be granted to survive Giroux's motion to dismiss.

### 2. Statements Regarding Negligence and Incompetence

Lastly, Giroux asserts that Johnson's statement, in his complaint, that "Registered Nurse Wendy Gi[r]oux is responsible for many situations that ultimately neglected me due to incompetence," doc. no. 1 at 26, constitutes a concession that he cannot state an Eighth Amendment claim against her, as an Eighth Amendment claim requires more than negligence. See doc. no. 33 at 4-5. The court is not persuaded.

Considering all of the assertions in the complaint, and construing the complaint liberally as the court must, the court finds that Johnson's above-quoted statement does not evince an intent to disavow any Eighth Amendment claim arising from the events underlying Claim 1(c)(ii). Additionally, the court will not dispense with an otherwise sufficiently stated Eighth Amendment claim because Johnson's complaint also includes a statement that a defendant was negligent and incompetent. See Carter v. Baker, No. 17-cv-052-LM, 2020 WL 4605228, at *4 (D.N.H. Aug. 10, 2020) ("The purpose motivating liberal

16

construction of a pro se party's pleadings is to avoid outcomes in which the court fails properly to consider the merits of a claim or defense simply because it was imperfectly pled or presented." (citing Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997)). Giroux's motion to dismiss Claim 1(c)(ii) is therefore denied.

## Conclusion

For the foregoing reasons, Giroux's motion to dismiss Claims 1(c)(i)-(ii) (doc. no. 33), and Lombard's motion to dismiss Claim 1(d)(i) (doc. no. 34) are denied without prejudice to each defendant's ability to reassert their arguments in a properly supported motion for summary judgment at an appropriate time in this matter.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

September 15, 2022

cc: Jacob William Johnson, pro se
    Counsel of Record.