**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jacob William Johnson</u>

      v.                    Case No.  1:20-cv-398-SE-AJ

<u>Dr. Celia Englander, et al.</u>

**<u>REPORT AND RECOMMENDATION</u>**

Pro se plaintiff Jacob William Johnson, previously an inmate in the custody of the New Hampshire Department of Corrections ("NHDOC"), filed suit against defendants[1] under 42 U.S.C. § 1983 and state law.  Johnson alleges defendants violated his Eighth Amendment rights to receive adequate medical care and to humane conditions of confinement while he was incarcerated at the New Hampshire State Prison ("NHSP").  He also alleges violations of his First Amendment right to petition the government for redress of his grievances.  Defendants now move for summary judgment on all of Johnson's claims (Doc. Nos. 123, 129, 130) based on his purported failure to properly exhaust available administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

---

[1] Named defendants are as follows: John Lombard, Brad Bowden, Denise Downing, Olivia Gamelin, Donna Dufresne, Martha Barbosa, Karen Carr, Fallon Marchand, Wendy Giroux, Gary Lydick, Nancy Clayman, Veronica Paris, Tina Crissfulli, Jane Dillon, Capt. Boynton, and Sgt. Turcotte (collectively "State Defendants").  Dr. Celia Englander and Dr. Jeffrey Fetter are also named defendants.

Johnson objects (Doc. No. 132).[2]

The motions for summary judgment are before the court for a recommendation as to disposition.  See Order, May 8, 2024.  As explained below, the court recommends that the district judge deny Dr. Englander's motion (Doc. No. 129); deny Dr. Fetter's motion (Doc. No. 130); and grant in part and deny in part State Defendants' motion (Doc. No. 123).  The court further recommends that an evidentiary hearing be scheduled to resolve factual disputes as to whether Johnson properly exhausted certain claims.

## Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party[.]'" Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case[.]'" Id. (quoting Pérez-Cordero v. Wal-

_____

[2] The parties also filed reply (Doc. Nos. 133, 134) and surreply briefing (Doc. Nos. 135, 136).  Further, Johnson filed motions to object (Doc. Nos. 137, 138), which the court construes as supplements to Johnson's objection.

Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).  When ruling
on a motion for summary judgment, the court must "view[] the
entire record 'in the light most hospitable to the party
opposing summary judgment, indulging all reasonable inferences
in that party's favor.'"  Winslow v. Aroostook Cty., 736 F.3d
23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc.,
229 F.3d 49, 53 (1st Cir. 2000)).

If the party moving for summary judgment bears the burden
of proof on an issue, that party "must provide evidence
sufficient for the court to hold that no reasonable trier of
fact could find other than in its favor." Am. Steel Erectors,
Inc. v. Loc. Union No. 7, Int'l Ass'n of Bridge, Structural,
Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir.
2008).  The burden then "shifts to the nonmovant to establish
that a genuine material dispute exists." Harley-Davidson Credit
Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015).  To defeat
summary judgment, "the nonmoving party must . . . 'set forth
specific facts showing that there is a genuine issue for
trial[.]'" Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 56-57
(1st Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)).  "Conclusory allegations, improbable
inferences, and unsupported speculation, are insufficient to
establish a genuine dispute of fact." Travers v. Flight Servs.
& Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (internal

quotation marks and citation omitted).  In determining whether a
trial-worthy issue exists, the court will consider "all of the
record materials on file, including the pleadings, depositions,
and affidavits[,]" but is not permitted to evaluate the
credibility of witnesses or weigh the evidence.  Hicks v.
Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## Background

**I.  Claims**

Following preliminary review of Johnson's initial
pleadings, this court authorized service of the following
claims[3]:

1. Defendants violated Johnson's Eighth Amendment right to
receive adequate medical care for his serious medical needs
related to his false passage and urinary tract problems and
are liable to him for negligence or professional
malpractice under State law, in that:

    a. NHDOC/NHSP Dr. Celia Englander:

        i.    on March 3, 2017, failed to diagnose acute
urinary retention and thus failed to address
Johnson's pain, swollen stomach, and body aches,
despite being advised that Johnson was unable to
urinate and was suffering from urinary
retention, and knowing of Johnson's underlying
urinary tract conditions;

        ii.   on March 4, 2017, instructed a nurse not to send
Johnson to the hospital despite knowing Johnson
was in excruciating pain due to his urinary
tract problems; and

---

[3] Johnson voluntarily dismissed Claim 1(l) as to NHDOC/NHSP
Nurse Ellen Halle-Cocoran.  See Notice of Voluntary Dismissal
(Doc. No. 80).

    iii. failed to instruct NHSP Nurses John Lombard, Denise Downing, and Wendy Giroux to provide Johnson with appropriate medical care when he was suffering from sharp pain due to acute urinary retention.

b. NHDOC/NHSP Dr. Jeffrey Fetter:

    i. on August 21, 2017, inflicted trauma on Johnson's penis by making repeated unsuccessful attempts to catheterize Johnson, even after Johnson told Dr. Fetter that he "couldn't take it anymore," causing Johnson extreme pain, Compl. at 27;

    ii. denied Johnson care for a week for a UTI diagnosed subsequent to Dr. Fetter's August 21, 2017 failure to catheterize Johnson, despite being aware that Johnson was experiencing urinary retention and that his Foley catheter was blocked and leaking; and

    iii. failed to change Johnson's Foley catheter every thirty days and failed to provide Johnson with sufficient disposable catheters, contrary to Johnson's urologist's instructions.

c. NHDOC/NHSP Nurse Wendy Giroux:

    i. on March 2, 2017, failed to identify Johnson's urinary retention, resulting in a progression of his condition to acute urinary retention; and

    ii. refused, on more than one occasion, to catheterize Johnson when his Foley catheter was clogged, stating that "she didn't feel like it."

d. NHDOC/NHSP Nurse John Lombard:

    i. on March 3, 2017, delayed evaluating Johnson when Johnson was experiencing a medical emergency due to acute urinary retention and, when he eventually saw Johnson, failed to

catheterize him, failed to have Johnson seen
at a hospital, and failed to use a bladder
scanner to evaluate Johnson's condition.

e. NHDOC/NHSP Nurse Denise Downing:

i.   on March 4, 2017, disregarded Johnson's acute
     urinary retention and instead instructed
     Johnson to drink more fluids, failed to
     catheterize Johnson, disregarded the blood in
     Johnson's urine, and failed to obtain
     necessary additional medical assistance for
     Johnson, which caused Johnson to experience
     extreme pain.

f. NHDOC/NHSP Nurse Donna Dufresne:

i.   on June 15, 2017, refused to change Johnson's
     Foley catheter, which had been placed on May
     4, 2017, even though his catheter was supposed
     to be changed at least every thirty days,
     "despite obvious signs of [the catheter] not
     working," Compl. at 20-21, causing Johnson
     excruciating pain and necessitating that he be
     taken to the hospital for treatment;

ii.  on August 21, 2017, when Johnson went to the
     medical department due to a problem with his
     Foley catheter, removed his catheter but was
     unable to insert a replacement catheter
     despite numerous attempts, causing Johnson
     "enormous pain," Compl. at 21; and

iii. on August 28, 2017, when Johnson had an
     infected penis which "needed to be cleaned
     constantly," Compl. at 21, denied him alcohol
     wipes and told him to use soap and water
     rather than alcohol wipes, contrary to
     Johnson's urologist's instruction that Johnson
     keep the area sanitized to prevent infection.

g. NHDOC/NHSP Nurse Olivia Gamelin:

i.   on June 17, 2017, was unable to catheterize
     Johnson and sent him back to his unit,
     although he was in extreme pain due to urinary
     retention severe enough to constitute a

medical emergency, without remedying his
emergency condition or treating his pain;

ii. on August 20, 2017, refused to properly care
for Johnson and did not treat his pain,
relating to what was subsequently diagnosed as
a UTI, when Johnson went to the NHSP medical
department because his Foley catheter was
"clogging up really bad," Compl. at 19;

iii. refused to provide Johnson with an adequate
number of disposable catheters May 5-7, 2018,
which prevented Johnson from sufficiently
emptying his bladder, in that she gave him
only one for an entire day and night, contrary
to the urologist's instructions that Johnson
use six catheters per day; and

iv. made him catheterize himself in unsanitary
conditions when Johnson was housed in an
unsanitary and filthy cell.

h. NHDOC/NHSP Nurse Brad Bowden:

i. on August 23, 2017, failed to treat Johnson
when he sought medical care for UTI symptoms
caused by his failing and leaking Foley
catheter;

ii. on August 26, 2017, denied Johnson adequate
medical care for a UTI;

iii. on Saturday, March 10, 2018, gave Johnson ten
disposable catheters and instructed him not to
return to the medical department for more
catheters until the following Saturday,
stating that he didn't care that ten catheters
would not last for the full week, contrary to
Johnson's urologist's instructions that he use
six catheters per day;

iv. on May 3, 2018, denied Johnson disposable
catheters "despite [Johnson] needing and
begging for them."

i. NHDOC/NHSP Nurse Tina Crissfulli, on August 26,
2017, when Johnson went to the NHSP medical

department for "an emergency with [his] Foley
catheter which was plugging up resulting in
leakage," Compl. at 25, would not let Johnson
demonstrate how his catheter was leaking or provide
adequate care for his urinary tract problem, which
was diagnosed the following day as a UTI.

j. NHDOC/NHSP Nurse Veronica Paris:

    i.   on August 28, 2017, failed to provide Johnson
with alcohol pads to clean himself, despite
Johnson's urologist's instruction that Johnson
keep the area sanitized to prevent infection,
when Johnson reported that, due to his UTI,
urine was leaking from his Foley catheter; and

    ii.   on September 5, 2017, did not help Johnson
when he went to the NHSP medical department
for assistance with his Foley catheter, which
was blocked, "causing voiding issues," Compl.
at 27, due to what was later diagnosed as a
UTI.

k. NHDOC/NHSP Nurse Jane Dillon:

    i.   on February 25, 2018, told Johnson to
catheterize himself less than two or three
times a day, contrary to his urologist's
instruction that he catheterize himself six
times per day, despite knowing that his
bladder retains urine and does not fully void,
placing Johnson at risk of infection;

    ii.   on May 5-7, 2018, would not allow Johnson more
than one disposable catheter per day, contrary
to his urologist's instruction that he use six
disposable catheters per day, and knowing that
his bladder retains urine and does not fully
void; and

    iii.   on May 5-7, 2018, with an "enormous attitude,"
Compl. at 24, refused to catheterize Johnson
with a Foley catheter when his bladder felt
full, after he told her that he needed to have
a Foley catheter.

m. NHDOC/NHSP Nurse Nancy Clayman, on May 4, 2018, denied Johnson medical supplies he needed to care for his urinary tract problems, did not listen to Johnson's concerns regarding medical matters, and stated that Johnson had no rights.

o. SHU Officers Capt. Boynton and Lt. Lydick refused to allow Johnson to try to obtain sufficient disposable catheters from the NHSP medical department.

2. Defendants violated Johnson's Eighth Amendment right to receive adequate medical care during his incarceration and are liable to him for negligence or professional malpractice under State law, in that:

a. NHDOC/NHSP Dr. Celia Englander, on August 6, 7, and 30, 2018, failed to ensure that Johnson received the proper daily dose of his medications.

b. NHDOC/NHSP Nurse Karen Carr, on August 6, 2018, overmedicated Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

c. NHDOC/NHSP Nurse Fallon Marchand, on August 6, 2018, overmedicated Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

d. NHDOC/NHSP Nurse Martha Barbosa, on August 7, 2018, overmedicated Johnson by causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

e. On August 30, 2018, NHDOC/NHSP Nurse Olivia Gamelin, knowing that Johnson had been overmedicated on August 6 and 7, 2018, overmedicated Johnson by causing him to get an extra dose of his Oxcarbazepine Trilecto.

f. SHU Officers Capt. Boynton, Lt. Lydick, and Sgt. Turcotte, on August 6 and 7, 2018, overmedicated Johnson by improperly administering his psychological and pain medications to him and causing him to get extra doses of Oxcarbazepine Trilecto and Clonidine.

4. Defendants violated Johnson's Eighth Amendment right to humane conditions of confinement, in that:

    a. DOC/NHSP Nurse Jane Dillon, on May 5-7, 2018, refused to help Johnson obtain cleaning supplies, knowing that he was not able to get cleaning supplies from the SHU staff, despite Johnson telling her that he had a heightened risk of infection because of the filthy condition of his cell.

    b. SHU Officers Capt. Boynton, Lt. Lydick, and Sgt. Turcotte:

      i. on many occasions, allowed toilet water to flood Johnson's housing tier and allowed Johnson's cell to remain flooded for hours while denying him cleaning supplies, which deprived him of a sanitary place to catheterize himself and contaminated his disposable catheters.

6. SHU Officer Lt. Lydick violated Johnson's First Amendment right to petition the government for redress of his grievances when Lt. Lydick threatened to send Johnson, who is serving a Florida state sentence at the NHDOC, back to Florida for "filing grievances and making complaints," Compl. at 29, knowing that Johnson would likely be murdered if he were returned to Florida.

## II.  The NHDOC's Grievance Policy

During the period of March 2017 through September 2018, Policy and Procedure Directive 1.16 ("PPD 1.16") governed the NHDOC's administrative grievance procedure.  See Aff. of Tahra White, Feb. 6, 2024, (Doc. No. 123-5) ¶ 5.  PPD 1.16 provides a three-level administrative process for inmates to seek formal review of issues related to any aspect of their confinement.  See PPD 1.16 (Doc. No. 123-5) at 5-7.  The first level requires an inmate to complete an Inmate Request Slip ("Request Slip")

within 30 calendar days of the date on which the event occurred. Id. at 5. A Request Slip "should be addressed to the lowest level staff person with authority to address the issue raised." Id. It must also refer to a single, event, incident, or subject matter and contain "sufficient detail to allow for investigation, including but not limited to: the inmate's/ resident's name, the date of the occurrence, the name(s) of departmental staff involved, the names of witnesses, the nature of the complaint or request and what relief or action is requested." Id. A NHDOC officer then has "15 working days" to answer the Request Slip, but this response deadline can be extended by an additional 15 days if the content of the Request Slip requires further investigation. Id. at 6.

The second level requires an inmate to complete a Grievance Form ("Level II Grievance"). Id. A Level II Grievance must contain the same information as the Request Slip and also demonstrate that either the Request Slip process has been utilized or a waiver has been obtained. Id. at 6-7. The Warden or the Director must receive a Level II Grievance within 30 calendar days from the date of the response to a Request Slip, and then they have 30 calendar days to respond, subject to a 15-day extension. Id.

The third level requires an inmate to appeal the response of the Warden or Director to the Commissioner's Office within 30 calendar days of the date of the response and to demonstrate that the inmate utilized the Request Slip and Level II Grievance process ("Level III Grievance"). Id. at 7. The Commissioner's Office then has 30 calendar days to respond to the appeal. Id. All documents in the grievance process are date stamped, and under PPD 1.16, the timeframes and use of the appropriate forms are mandatory. Id. at 8.

## III.   Johnson's Exhaustion Efforts

On July 14, 2023, State Defendants provided Johnson with discovery, including approximately 2,161 pages of Request Slips, Grievance Forms, and additional documentation related to his PLRA exhaustion efforts.[4] Defs.' Joint Status Report (Doc. No. 102) ¶ 1.[5] For clarity, the court describes Johnson's exhaustion efforts according to the time period of the alleged conduct or incident giving rise to his grievances.

---

[4] The court references these documents by defendants' Bates stamp number, which begins with "DOC" followed by a page number.

[5] State Defendants also propounded interrogatories and requests for admissions to Johnson regarding PLRA exhaustion. Johnson provided responses to requests for admissions and a single response to interrogatories. See (Doc. Nos. 123-4, 123-6, 123-8, 123-9, 123-10, 123-11, 123-12, 123-13, 123-14, 123-15, 123-16, 123-17, 123-18, 123-19, 123-20).

### A. March 2017

It is undisputed that Johnson submitted the following Request Slip and Grievance Forms for conduct that allegedly occurred in March 2017.

### I.   Request Slip

On March 5, 2017, Johnson submitted a Request Slip, in which he referred to receiving "deplorable medical treatment" the previous Friday.  See Ex. 1-A to Decl. of Tahra White ("White Decl.") (Doc. No. 123-3) at DOC 488.  Captain Marshall responded on March 7, 2017 and indicated that he was "in the process of taking care of [Johnson's] grievance."  Id.

### II.  Level II Grievance

Johnson submitted a Level II Grievance on March 5, 2017. Id. at DOC 661.  In the Level II Grievance, he stated that the day after his appointment with a urology specialist, he experienced "difficulty urinating" and "pain in [his] bladder." Id. at DOC 655.  He was seen by a "Mrs. Wendy," id., who appears to be Nurse Giroux.  Johnson stated that despite sharing his symptoms with Nurse Giroux, she had him return to his unit.  Id. Later that day, however, Nurse Giroux purportedly called Johnson back "to be evaluated once more by her and Dr. Englander."  Id. According to Johnson, Dr. Englander and Nurse Giroux ultimately sent him back to his unit again, and his symptoms worsened.  Id. at DOC 655-56.  Johnson claimed he later sought emergency

13

assistance.  Id.  Nurse John Lombard allegedly refused to see
Johnson at first and only did so after Johnson asked for his
name.  Id. at DOC 656.  According to Johnson, despite his
complaints about pain, blood in his urine, and requests to be
catheterized, Nurse Lombard "refused to help [Johnson] and was
unprofessional." Id. at DOC 656-57.  Johnson stated that he
sought emergency assistance a second time, and "Nurse Denise,"
who appears to be Nurse Downing, treated and evaluated him.  Id.
at DOC 657.  Nurse Downing "determined [Johnson] needed to go to
the hospital," but Dr. Englander purportedly overruled that
recommendation and refused to send Johnson to the hospital.  Id.
at DOC 657-58.  Johnson claimed that Nurse Downing then
instructed him to drink lots of water, which caused him further
pain.  Id. at DOC 658.  According to Johnson, he eventually
obtained relief through the assistance of another nurse, who
transported him to the hospital, and the hospital confirmed that
he had been suffering from urinary retention and catheterized
him.  Id.

On March 10, 2017, Paula Mattis, the NHDOC Director of
Medical and Forensic Services, responded:

> We are reviewing these matters that you brought forth.
> I am concerned about your health and I am glad that
> you wrote about these [sic]. It is my understanding
> that you were seen by a provider today. Please
> continue to work with your provider on this issue.

Id. at DOC 661.[6]

   III.   Level III Grievances

     On April 24, 2017, the Commissioner's Office received a copy of Johnson's Level III Grievance, in which Johnson complained that he had not received a further response from Director Mattis in over a month, but the Commissioner provided no response.   Id.

     On July 23, 2017, Johnson filed another Level III Grievance, which the Commissioner's Office received on July 26, 2017.   Id. at DOC 676.   In that Level III Grievance, Johnson stated:

> Regarding Paula Mattis' response to my earlier grievances, Mrs. Mattis was cold, callous and showed no concern for the lack of medical care I received back on 3-3-2017 where medical was neglectful in caring for my basic needs.  Again, on 6-17-2017, when medical staff chose to ignore the clear instructions of my urologist to change my catheter every 30 days and I went into urinary retention, forcing a trip to CMC. Clearly Paula Mattis is not concerned with the way medical is treating patients in her responses. See original Grievance as attached.

Id.  On August 7, 2017, the Commissioner responded: "What you state is your opinion. Your grievance is denied."   Id.

---

[6] Johnson submitted a separate Level II Grievance on March 9, 2017, Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 152, which appears to raise the same issues regarding his medical care.  Director Mattis provided a response on April 25, 2017, which directed Johnson to refer to the response to the March 5, 2017 Level II Grievance.

**B. June 2017**

It is undisputed that Johnson submitted the following Request Slips and Grievance Forms for conduct that allegedly occurred in June 2017.

1. Request Slips

On June 18, 2017 and June 22, 2017, Johnson submitted Request Slips, in which he raised concerns about his catheter not being timely changed and other medical issues arising from that delay. Id. at DOC 581, 585. On June 26, 2017, Dr. Fetter responded to the first Request Slip, indicating that Johnson had a urology appointment scheduled and directing Johnson to "come to sick call if [his] symptoms worsened." Id. at DOC 581. On July 19, 2017, Dr. Fetter responded to the second Request Slip: "I understand that your [catheter] was ultimately changed in the emergency room [on] 6/19/17." Id. at DOC 585.

2. Level II Grievances

On July 3, 2017 and July 5, 2017, Johnson submitted Level II Grievances and referenced concerns about his catheter not being changed every 30 days, as instructed by the hospital, and the resulting excruciating pain he experienced in June 2017. Id. at DOC 665, 670. Johnson identified a "Mrs. Olivia," who appears to be Nurse Gamelin, as the person who failed to change his catheter. Id. at DOC 669. On July 19, 2017, Director Mattis responded: "I understand that you have had urology

16

appointments since this was written. If you have further difficulties please contact Ryan Landry immediately." Id. at DOC 670.

### 3. Level III Grievance

As noted above, Johnson filed a Level III Grievance on July 23, 2017 and referenced, in relevant part, concerns about the failure to timely change his catheter in June 2017. Id. at DOC 676. The Commissioner's Office responded: "What you state is your opinion. Your grievance is denied." Id.

## C. July 2017 and August 2017 – Nurses

It is undisputed that Johnson submitted the following Request Slips and Grievance Forms for conduct by certain NHDOC nurses that allegedly occurred in July and August of 2017.

### 1. Request Slips

On August 18, 2017, Johnson submitted a Request Slip, in which he stated that on July 18, 2017, Nurse Bowden refused him "any alcohol pads to sanitize [his] catheter tube after [he] returned from Manchester urology." Id. at DOC 601. On September 5, 2017, NHDOC/NHSP Nurse Carlene Ferrier stated: "Mr. McAvoy did . . . training with you on catheter care. Alcohol pads are not recommended for catheter care." Id.

On August 22, 2017, Johnson submitted another Request Slip, in which he raised concerns about two nurses who allegedly failed to change his catheter when he complained about his

"catheter not functioning correctly" and caused him to be in urinary retention.  Id. at DOC 609.  It appears that Dr. Englander provided a substantive response on August 31, 2017, and indicated, in part, that she did "not want the nurses to catheterize [Johnson]."  Id.

Johnson also filed third and fourth Request Slips on August 23, 2017 and September 6, 2017, regarding Nurse Brad Bowden allegedly failing to provide Johnson with necessary alcohol pads for use in connection with his catheter and ignoring his urinary tract infection ("UTI").  Id. at DOC 611, 621.  On September 5, 2017, Nurse Ferrier responded to the third Request Slip: "I responded to your concerns regarding alcohol pads on the IRS dated 8/18/17."  Id. at DOC 611; see also id. at DOC 601.  On September 27, 2019, Dr. Fetter responded to the fourth Request Slip: "The supervisor of the nurses is Ryan Landry, RN. I understand you've now secured preparation H. Apologies it took so long."  Id. at DOC 621.

### 2. Level II Grievances

On August 26, 2017, Johnson filed a Level II Grievance, and claimed that when he sought emergency medical treatment due to his catheter becoming clogged on August 26, 2017, Nurse Bowden "made [Johnson] afraid for his safety by invading [Johnson's] space and putting his hand in [Johnson's] face."  Id. at DOC 678.  Johnson also referenced Nurse Bowden's refusal to provide

18

him with necessary "alcohol pads and a new urinary bag." Id. at DOC 681. Johnson further claimed that Nurse Bowden and "Mrs. Crissafulli," who appears to be Nurse Crissfulli, failed to provide him with adequate medical treatment when his catheter was not working properly. Id. at DOC 681-82. On September 1, 2017, Director Mattis responded to his Level II Grievance: "I will review this matter further. I understand you did get the catheter changed. Thank you for writing." Id. at DOC 678.

On September 12, 2017, Johnson filed a second Level II Grievance and stated he "was brutally catheterized." Id. at DOC 685. He further stated that he had a UTI and "every nurse who refused [him] adequate care disregarded [his] health and safety." Id. On September 26, 2017, Director Mattis responded: "Thank you for writing. I will review this." Id.

### 3. Level III Grievances

On September 12, 2017, Johnson filed a Level III Grievance, which the Commissioner's Office received on September 18, 2017. Id. at DOC 683. Johnson stated he was "grieving the Nurse Brad Bowden for putting his hands in [Johnson's] face and aggressively entering [Johnson's] space . . . ." Id. at DOC 683. Johnson also stated that Nurse Bowden and a "lady nurse . . . failed to provide [him] with adequate healthcare . . . ." Id. On September 27, 2021, Director Mattis responded: "Thank

you for writing. We are reviewing your concerns." Id.[7]

On October 1, 2017, Johnson filed another Level III Grievance and referenced concerns about "urinary retention" and "extreme pain" after his catheter became clogged. Id. at DOC 693. The Commissioner's Office received the Level III Grievance on October 4, 2017, and on October 17, 2017, Director Mattis responded: "Catheterization is a difficult process. The plan is to teach you self-catheterization." Id.

### D. August 2017 – Dr. Fetter

It is undisputed that Johnson submitted the following Request Slip and Grievance Forms for conduct by Dr. Fetter that allegedly occurred in August 2017.

#### 1. Request Slip

On August 25, 2017, Johnson filed a Request Slip, in which he raised concerns about pain he experienced when Dr. Fetter and other nurses attempted to change his catheter. Id. at DOC 615. Dr. Fetter responded on August 28, 2017 and stated: "As you know I am working on this with you." Id.

---

[7] On October 1, 2017, Johnson filed a second Level III Grievance regarding Nurse Bowden "putting his hands in [Johnson's] face" and invading his personal space, which the Commissioner's Office received on October 4, 2017. Id. at DOC 691. On October 17, 2017, Director Mattis responded and stated that she reviewed that matter with the staff involved. Id.

2. <u>Level II Grievance</u>

On September 12, 2017, Johnson filed a Level II Grievance and stated: "I was brutally catheterized here as the nurse and Dr. Jeffrey Fetter attempted many times and [were] unable to successfully catheterize me . . . I began having problems with my catheter clogging up [and] going into urinary retention . . . ." <u>Id.</u> at DOC 685.  Johnson further complained that he had a UTI and "every nurse who refused [him] adequate care disregarded [his] health and safety." <u>Id.</u>  On September 26, 2017, Director Mattis responded: "Thank you for writing. I will review this." <u>Id.</u>

3. <u>Level III Grievance</u>

On October 1, 2017, Johnson filed a Level III Grievance and stated: "Dr. Jeffrey Fetter attempted many times and was unable to successfully catheterize me . . . shortly after I was catheterized I began complaining of my catheter clogging up [and] going into severe urinary retention . . . ." <u>Id.</u> at DOC 693.  Johnson also complained about "extreme pain in [his] stomach area, chest, [and] private area." <u>Id.</u>  The Commissioner's Office received the Level III Grievance on October 4, 2017, and on October 17, 2017, Director Mattis responded: "Catheterization is a difficult process. The plan is to teach you self-catheterization." <u>Id.</u>

21

### E. September 2017

Johnson asserted a claim against Nurse Paris for allegedly failing to assist him with his catheter problems in September 2017.  While the undisputed facts show that Johnson filed Level II and Level III Grievances regarding conduct by Nurse Bowden during this time period, see id. at DOC 687, 695, there are no grievances concerning Nurse Paris.

### F. February 2018, March 2018, May 2018, and August 2018

The record contains some Request Slips concerning 2018 conduct.  Specifically, on March 14, 2018, Johnson filed a Request Slip, in which he asked Landry to meet with him regarding Nurse Bowden's failure to provide him with the correct amount of self-catheters.  Id. at DOC 930.  On March 23, 2018, Landry responded: "I think the issue is corrected."  Id.  On April 5, 2018 and April 16, 2018, Johnson filed two additional Request Slips regarding Nurse Bowden's alleged refusal to provide Johnson with self-catheters on March 10, 2018, and the NHDOC responded on April 18, 2018.  Id. at DOC 944, 950.  In addition, on May 18, 2018, Johnson submitted a Request Slip, in which he referenced Nurses Gamelin and Dillon failing to provide him with self-catheters he ordered.  Id. at DOC 961.  On June 8, 2018, Landry responded and directed Johnson to discuss this issue with the nursing staff.  Id.  On May 20, 2018, Johnson filed a second Request Slip, in which he complained that a nurse

improperly instructed him to only catheterize once a day.  Id.
at DOC 963.  On June 8, 2018, Landry responded and stated the
issue had been addressed.  Id.

Although Johnson asserted claims against defendants for
conduct that allegedly occurred in February, March, May, and
August of 2018, the record appears to contain no Level II
Grievances or Level III Grievances regarding such conduct.
Johnson, however, provided, in relevant part, the following
sworn statement in his answers to interrogatories:

> I have grieved, made complaints and written request
> slips to deal with behavior . . . as all the
> defendants involved in 2018 are egregiously culpable .
> . . Every request slip, grievance, complaint in 2018
> dealt with overly medicated on 8/6/18, 8/7/18 and
> 8/30/18. I complained about correctional officers
> passing out psychological meds and pain meds . . . I
> also grieved that I did not have the amount of
> catheters I always need in order to urinate.  I also
> complained that Captain Boynton, Lt. Lydick, and Sgt.
> Turcotte refused my tier (J tier) where I was housed
> in the SHU in August of 2018 and were denied showers
> for several days . . . I also complained that . . .
> Lt. Lydick threatened to have me sent back to Florida
> . . . if I didn't stop grieving Turcotte . . . I also
> grieved that our rooms were flooded and they left
> sewer water in our rooms for hours . . . I also
> complained that Captain Boynton, Sgt. Turcotte, and
> Lt. Lydick . . . started denying me grievances and
> request slips. I had thankfully a few true
> professional correctional officers who gave me the
> forms.

See Answers to Interrogs. (Doc. No. 123-4) at 1.

**Discussion**

Defendants argue that they are entitled to summary judgment on all of Johnson's claims because Johnson failed to satisfy the PLRA exhaustion requirement as to each claim before filing this action.  In particular, defendants assert that Johnson failed to comply with the NHDOC's three-level grievance process set forth in PPD 1.16.  State Defendants also raise certain procedural defects in support of their argument, including Johnson's purported failure to wait to obtain a decision on the Request Slips prior to filing a Level II Grievance, failure to file Level II and Level III Grievances thereafter, and failure to state "what relief or action is requested" in each grievance.

In his objection, Johnson maintains that he properly exhausted all available administrative remedies.  He also claims—for the first time—that NHDOC staff stole or destroyed paperwork and that exhaustion was unavailable while he was housed in NHSP's Special Housing Unit ("SHU").

I. **Exhaustion Under the PLRA**

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  As explained by the Supreme

Court, this provision requires "proper exhaustion" of administrative remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 84 (2006) (emphasis in original). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'-rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). Accordingly, "[p]roper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91 (footnote omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211. Additionally, "[p]risoners must . . . exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by" the prison's specific administrative process. Woodford, 548 U.S. at 85; see also Stow v. McGrath, No. 17-cv-088-LM, 2021 WL 1178303, at *10-11, 2021 U.S. Dist. LEXIS 59384, at *30-32 (D.N.H. Mar. 29, 2021) (noting that petitioner's failure to request monetary

damages in his grievances was not dispositive on the issue of
exhaustion and holding that defendants did not meet their burden
to show petitioner's failure to exhaust administrative
remedies).  If a prisoner fails to exhaust his administrative
remedies before filing suit, any unexhausted claims must be
dismissed.  See Ramirez v. Collier, 595 U.S. 411, 421
(2022) (ruling that prisoner could not proceed with claims
brought under federal law if he failed to exhaust all available
administrative remedies); Medina-Claudio v. Rodríguez-Mateo, 292
F.3d 31, 36 (1st Cir. 2002) (holding that dismissal was
appropriate "[s]ince Congress clearly made the exhaustion of
administrative remedies a necessary antecedent to filing a claim
in federal court" under the PLRA).

A claim that a prisoner failed to exhaust administrative
remedies "is an affirmative defense under the PLRA[.]" Jones,
549 U.S. at 216.  Therefore, to prevail on their motion for
summary judgment, defendants "must show that no factfinder could
reasonably conclude that plaintiff exhausted available remedies
before filing suit." Burns v. Croteau, 561 F. Supp. 3d 164, 168
(D.N.H. 2020).  If the summary judgment record does not
conclusively establish that a prisoner failed to exhaust
available administrative remedies, the district court should
conduct an evidentiary hearing to resolve the exhaustion issue
before a jury decides any factual questions pertaining to the

merits of the case.  See Albino v. Baca, 747 F.3d 1162, 1170-71 (9th Cir. 2014) ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue.").

## II.  Analysis of PLRA Exhaustion as to Johnson's Claims

### A. NHDOC/NHSP Dr. Celia Englander

#### 1. Claims 1(a)(i)-(iii)

Johnson's 2017 claims against Dr. Englander arise from her alleged: (i) failure to properly diagnose his urinary retention in March 2017; (ii) refusal to send him to the hospital despite his report of excruciating pain in March 2017; and (iii) failure to instruct Nurses Lombard, Downing, and Giroux to provide him with appropriate medical care.  Although Dr. Englander argues that there are no relevant grievances that comply with all three levels of the grievance process set forth in PPD 1.16, the record reveals that Johnson submitted grievances at each level and that the NHDOC provided substantive responses.

Specifically, Johnson filed a Request Slip dated March 5, 2017, which referenced "deplorable medical treatment," and Captain Marshall responded, stating that he was in the process of taking care of Johnson's grievance.  See Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 488.  Johnson also filed a Level

II Grievance on March 5, 2017, which referenced Dr. Englander
sending him back to his unit despite his difficulty urinating
and pain in his bladder and refusing to send him to the
hospital.  Id. at DOC 656-58, 661.  Director Mattis responded,
indicating that she was reviewing the matters raised by Johnson
and directing Johnson to continue to work with his provider.
Id. at DOC 661.  On July 23, 2017, Johnson submitted a Level III
Grievance, which referenced the lack of medical care he received
in March 2017, and the Commissioner responded: "What you state
is your opinion. Your grievance is denied."  Id. at DOC 676.

    To the extent Dr. Englander argues that Johnson's
grievances lack adequate detail, the court disagrees.  "The
level of detail necessary in a grievance to comply with
the grievance procedures will vary from system to system and
claim to claim, but it is the prison's requirement, and not
the PLRA, that define the boundaries of the proper exhaustion."
Jones, 549 U.S. at 218.  PPD 1.16 requires an inmate's
grievances to contain "sufficient detail to allow for
investigation . . . ."  PPD 1.16 (Doc. No. 123-5) at 5-7.
Johnson's grievances provided sufficient detail to allow for
investigation as required by PPD 1.16.  See Stow, 2021 WL
1178303, at *10-11, 2021 U.S. Dist. LEXIS 59384, at *30-32;
Mallory v. Marshall, 659 F. Supp. 2d 231, 238 (D. Mass. 2009)
("The primary purpose of a grievance system is to alert prison

officials of problems, not to act as notice that particular prison officials may be sued.").

Further, to the extent Dr. Englander asserts that Johnson's grievances are insufficient due to other procedural defects, neither the Commissioner nor any other NHDOC representative identified any procedural defects in response to Johnson's grievances.  When a prisoner's allegations "have been fully examined *on the merits* by the ultimate administrative authority and have been found wanting[,]" courts have not required the prisoner to "jump through any further administrative hoops to get the same answer." Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (emphasis in original).  In other words, "a prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not *explicitly* rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (emphasis in original).[8]

---

[8] See also Reyes v. Smith, 810 F.3d 654, 657-58 (9th Cir. 2016) (noting that "all seven of our sister circuits to have considered the issue have concluded that the PLRA exhaustion requirement is satisfied if prison officials decide a potentially flawed grievance on the merits[,]" and holding that the prisoner exhausted his administrative remedies, notwithstanding his failure to comply with applicable procedural regulations, where prison officials ignored the procedural problem and rendered a decision on the merits of the prisoner's

Given the NHDOC's substantive responses to Johnson's grievances at each level and the absence of any reference to procedural defects in those responses, the undisputed facts demonstrate that Johnson exhausted Claims 1(c)(i)-(iii), as required under the PLRA. Accordingly, the court recommends that the district judge deny Dr. Englander's motion for summary judgment (Doc. No. 129) as to those claims.

2. Claim 2(a)

Johnson's August 2018 claim against Dr. Englander alleges that she failed to ensure that Johnson received the proper daily doses of his medication. Dr. Englander argues that there are no grievances concerning this claim that comply with the requirements of PPD 1.16. In response, Johnson asserts that NHDOC staff stole or destroyed paperwork and that it was not possible to get a grievance in SHU. Although not addressed by either party, Johnson testified in his prior sworn statement that he grieved being "overly medicated on 8/6/18, 8/7/18 and 8/30/18." See Answers to Interrogs. (Doc. No. 123-4) at 1.

---

grievance); Reed-Bey v. Pramstaller, 603 F.3d 322, 326 (6th Cir. 2010) (ruling that the prisoner properly exhausted his claim, despite failure to comply with prison procedural rules, where prison officials chose to address the prisoner's grievance on the merits); Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (explaining that an untimely claim is exhausted where "prison administrators choose to consider the merits of an untimely grievance").

While the record contains no Level II or Level III
Grievances for the alleged August 2018 conduct, the court must
consider Johnson's prior sworn statement.  Setting aside his
vague and conclusory assertion that NHDOC staff stole or
destroyed paperwork, see Travers, 737 F.3d at 146, Johnson's
sworn statement about grieving the alleged August 2018 conduct
contains sufficient detail to create a genuine dispute of
material fact as to whether he exhausted available
administrative remedies.  See Maraglia v. Maloney, 499 F. Supp.
2d 93, 96-97 (D. Mass. 2007) ("[T]he plaintiff's statements
under oath that he filed grievances at the time and place
required by the regulations suffice here to create a dispute of
fact."); see also Tibbs v. Massachusetts, No. 05-CV-12509-RGS,
2007 WL 2114673, at *1, 2007 U.S. Dist. LEXIS 52583, at *4 (D.
Mass. July 20, 2007) (holding that plaintiff's submission of an
unsigned grievance form and his sworn statement that the form
was signed and timely filed created a genuine dispute of
material fact regarding exhaustion).  Moreover, nothing in
Johnson's objection directly contradicts his testimony that he
grieved the alleged August 2018 conduct.  Cf. Stow, 2021 WL
1178303, at *12, 2021 U.S. Dist. LEXIS 59384, at *36 (noting
that a plaintiff cannot not rely on an "unexplained
inconsistency to avoid summary judgment under such
circumstances.").

Accordingly, the court finds that there is a genuine dispute of material fact as to whether Johnson exhausted Claim 2(a). The court, therefore, recommends that the district judge deny Dr. Englander's motion for summary judgment (Doc. No. 129) as to this claim. The court further recommends that an evidentiary hearing be scheduled to determine whether Johnson properly exhausted this claim.

**B. NHDOC/NHSP Dr. Jeffrey Fetter – Claims 1(b)(i)-(iii)**

Johnson's claims against Dr. Fetter concern Dr. Fetter's alleged: (i) repeated attempts to catheterize Johnson in August 2017; (ii) denial of care for Johnson's UTI; and (iii) failure to change Johnson's catheter every 30 days. In his motion, Dr. Fetter argues that there are no grievances from Johnson concerning these claims that comply with all three levels of the grievance process set forth in PPD 1.16. The court disagrees.

As to Claims 1(b)(i) and 1(b)(ii), the undisputed facts demonstrate that Johnson filed a Request Slip on August 25, 2017, referencing the failed attempts to change his catheter, and Dr. Fetter provided a substantive response on August 28, 2017. Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 615. Director Mattis also provided a substantive response to Johnson's September 12, 2017 Level II Grievance, which raised the same issue and also raised concerns about the denial of care for a UTI. Id. at DOC 685. Finally, on October 4, 2017, the

32

Commissioner's Office received Johnson's Level III Grievance, which referenced Johnson's concerns regarding failed efforts to catheterize him and his UTI symptoms. Id. at DOC 693. Although Director Mattis, as opposed to the Commissioner, provided a substantive response, the undisputed facts demonstrate that Johnson complied with the timing and form requirements of PPD 1.16. Id. at DOC 685, 693.

Regarding Claim 1(b)(iii), Johnson raised the issue of his catheter not being changed in Request Slips dated June 18, 2017 and June 22, 2017, and Dr. Fetter provided substantive responses. Id. at DOC 581, 585. Director Mattis also provided substantive responses to Johnson's July 3, 2017 and July 5, 2017 Level II Grievances, which raised the same concern. Id. at DOC 670. Finally, on July 23, 2017, Johnson filed a Level III Grievance, raising the same issue, and the Commissioner responded: "What you state is your opinion. Your grievance is denied." Id. at DOC 676. To the extent Dr. Fetter argues that any of the above-referenced grievances lack adequate detail, the court disagrees. Johnson's grievances provided sufficient detail to allow for investigation as required by PPD 1.16. Mallory, 659 F. Supp. 2d at 238.

Given the NHDOC's substantive responses to Johnson's grievances at each level, the undisputed facts demonstrate that Johnson exhausted Claims 1(b)(i)-(iii), as required under the

33

PLRA.  Whatley, 898 F.3d at 1083.  Therefore, the court recommends that the district judge deny Dr. Fetter's motion for summary judgment (Doc. No. 130).

### C. NHDOC/NHSP Nurse Wendy Giroux - Claims 1(c)(i)-(ii)

Johnson's claims against Nurse Giroux arise from: (i) a March 2, 2017 incident when she allegedly failed to diagnose his urinary retention; and (ii) undated occasions when she allegedly refused to catheterize Johnson.  Nurse Giroux argues that Johnson failed to exhaust these claims due to various procedural defects, including his failure to wait for decisions at each level and his failure to state "what relief or action is requested" in each grievance.  The court disagrees.

The undisputed facts demonstrate that the NHDOC provided substantive responses to Johnson's March 5, 2017 Request Slip, March 5, 2017 Level II Grievance, and July 23, 2017 Level III Grievance.  See Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 488, 661, 655-58, 615, 676.  The March 5, 2017 Level II Grievance referenced Nurse Giroux sending Johnson back to his unit on two occasions, despite his symptoms of difficulty urinating and pain in his bladder, id. at DOC 655-56, and the July 23, 2017 Level III Grievance referenced inadequate medical care in March 2017.  Id. at DOC 676.

Where the NHDOC raised no procedural defects during Johnson's exhaustion efforts, the exhaustion defense is waived.

34

Whatley, 898 F.3d at 1083.  Further, Johnson's grievances provided sufficient detail to allow for investigation as required by PPD 1.16.  Mallory, 659 F. Supp. 2d at 238. Accordingly, the undisputed facts demonstrate that Johnson exhausted Claims 1(c)(i)-(ii), as required under the PLRA.  The court, therefore, recommends that the district judge deny State Defendants' motion for summary judgment (Doc. No. 123) as to these claims.

### D. NHDOC/NHSP Nurse John Lombard - Claim 1(d)(i)

Johnson's claim against Nurse Lombard alleges that Nurse Lombard failed to properly evaluate, catheterize, use a bladder scanner, or transfer Johnson to the hospital when Johnson was experiencing urinary retention.  Nurse Lombard argues that Johnson failed to properly exhaust available administrative remedies due to procedural defects.  The court disagrees.

The undisputed facts demonstrate that the NHDOC provided substantive responses to Johnson's March 5, 2017 Request Slip, March 5, 2017 Level II Grievance, and July 23, 2017 Level III Grievance.  Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 488, 661, 655-58, 615, 676.  The March 5, 2017 Level II Grievance referenced Nurse Lombard's alleged refusal to catheterize and properly treat or evaluate Johnson in March 2017, id. at DOC 656-57, and the July 23, 2017 Level III Grievance referenced inadequate medical care in March 2017.  Id. at DOC 676.

Where the NHDOC raised no procedural defects during
Johnson's exhaustion efforts, the exhaustion defense is waived.
Whatley, 898 F.3d at 1083.  Further, Johnson's grievances
provided sufficient detail to allow for investigation as
required by PPD 1.16.  Mallory, 659 F. Supp. 2d at 238.
Accordingly, the undisputed facts demonstrate that Johnson
exhausted Claim 1(d)(i), as required under the PLRA.  The court,
therefore, recommends that the district judge deny State
Defendants' motion for summary judgment (Doc. No. 123) as to
this claim.

### E. NHDOC/NHSP Nurse Denise Downing – Claim 1(e)(i)

Johnson's claim against Nurse Downing concerns her alleged
failure to properly treat or catheterize Johnson while he was
experiencing urinary retention and her alleged instruction to
him to drink more water.  Nurse Downing relies on procedural
defects in Johnson's exhaustion efforts to support her argument
that Johnson failed to properly exhaust available administrative
remedies.

The record, however, demonstrates that the NHDOC provided
substantive responses to Johnson's March 5, 2017 Request Slip,
March 5, 2017 Level II Grievance, and July 23, 2017 Level III
Grievance.  Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 488,
661, 655-58, 615, 676.  The March 5, 2017 Level II Grievance
referenced Nurse Downing improperly instructing Johnson to drink

lots of water when he sought emergency assistance for urinary retention issues, id. at DOC 657-58, and the July 23, 2017 Level III Grievance referenced inadequate medical care in March 2017. Id. at DOC 676.

Where the NHDOC identified no procedural defects during Johnson's exhaustion efforts, the exhaustion defense is waived. Whatley, 898 F.3d at 1083. Further, Johnson's grievances provided sufficient detail to allow for investigation as required by PPD 1.16. Mallory, 659 F. Supp. 2d at 238. Accordingly, the undisputed facts demonstrate that Johnson exhausted Claim 1(e)(i), as required under the PLRA. The court, therefore, recommends that the district judge deny State Defendants' motion for summary judgment (Doc. No. 123) as to this claim.

### F. NHDOC/NHSP Nurse Donna Dufresne – Claims 1(f)(i)-(iii)

Johnson's claims against Nurse Dufresne arise from her alleged: (i) failure to change Johnson's catheter in June 2017; (ii) failure to replace Johnson's catheter in August 2017; and (iii) refusal to provide Johnson with necessary alcohol wipes. In support of her argument that Johnson failed to properly exhaust available administrative remedies, Nurse Dufresne raises procedural defects.

1. <u>Claims 1(f)(i)-(ii)</u>

As to Johnson's first and second claims against Nurse Dufresne, the undisputed facts demonstrate that Johnson exhausted his administrative remedies. Regarding Claim 1(f)(i), the NHDOC provided a substantive response to Johnson's June 18, 2017 and June 22, 2017 Request Slips, which raised concerns about his catheter not being changed. <u>See</u> Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 581, 585. The NHDOC also provided substantive responses to Johnson's July 3, 2017 and July 5, 2017 Level II Grievances, which similarly raised concerns about his catheter not being changed every 30 days. <u>Id.</u> at DOC 665, 669, 670. Finally, the Commissioner provided a substantive response to Johnson's July 23, 2017 Level III Grievance, which noted the failure to timely change his catheter in June 2017. <u>Id.</u> at DOC 676.

As to Claim 1(f)(ii), the NHDOC provided a substantive response to Johnson's August 25, 2017 Request Slip, which referenced failed attempts to change his catheter. <u>Id.</u> at DOC 615. In addition, Director Mattis provided a substantive response to Johnson's September 12, 2017 Level II Grievance, which raised the same issue. <u>Id.</u> at DOC 685. As noted above, the Commissioner's Office received Johnson's Level III Grievance on October 4, 2017, which raised similar concerns, and Director Mattis provided a substantive response. <u>Id.</u> at DOC 693.

Where the NHDOC identified no procedural defects during Johnson's exhaustion efforts, the exhaustion defense is waived as to these claims. Whatley, 898 F.3d at 1083. Further, Johnson's grievances provided sufficient detail to allow for investigation as required by PPD 1.16. Mallory, 659 F. Supp. 2d at 238. Accordingly, the undisputed facts demonstrate that Johnson exhausted Claims 1(f)(i)-(ii), as required under the PLRA. The court, therefore, recommends that the district judge deny State Defendants' motion for summary judgment (Doc. No. 123) as to those claims.

### 2. Claim 1(f)(iii)

Regarding Claim 1(f)(iii), the undisputed facts demonstrate that Johnson filed no Level II or Level III Grievances concerning Nurse Dufresne's alleged refusal to provide him with alcohol pads. The court is not persuaded by Johnson's vague and conclusory testimony in his objection that NHDOC staff stole or destroyed paperwork and that exhaustion was unavailable while he was housed in SHU.[9] See Travers, 737 F.3d at 146. First, Johnson offers no sworn testimony regarding his exhaustion efforts as to this particular claim against Nurse Dufresne.

---

[9] The court is also not persuaded by Johnson's surreply (Doc. No. 136), which provides another conclusory statement that all defendants were grieved.

Further, his statement that exhaustion was unavailable[10] contradicts his prior sworn testimony.

Specifically, in his answers to interrogatories, Johnson confirmed that although certain correctional officers began denying him grievances and request slips in August 2018, he "thankfully [had] a few true professional correctional officers who gave [him] the forms." Id. Where the assertion in Johnson's objection contradicts his prior sworn statements, he cannot not rely on an "unexplained inconsistency to avoid summary judgment under such circumstances." Stow, 2021 WL 1178303, at *12, 2021 U.S. Dist. LEXIS 59384, at *36 (citing Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 20–21 (1st Cir. 2000); Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994)). Thus, the undisputed facts demonstrate that Johnson failed to exhaust his

---

[10] Defendants' evidentiary hurdle to show that the NHDOC's administrative remedies were "available" is not high. Crocco v. Winkler, 659 F. Supp. 3d 204, 210 (D.N.H. 2023). To meet their burden, defendants must offer "credible evidence that it informed the prisoner how to access information about the grievance procedure and ensured that the information was in fact accessible." Id. A plaintiff's use of the grievance procedure demonstrates actual knowledge and satisfies defendants' "availability" burden. See id. at 213. Here, the undisputed facts demonstrate that Johnson had actual knowledge of the grievance procedure given his frequent use of the process. See generally Ex. 1-A to White Decl. (Doc. No. 123-3).

administrative remedies with respect to Claim 1(f)(iii), and
therefore, this claim cannot proceed.  Accordingly, the court
recommends that the district judge grant State Defendants'
motion for summary judgment (Doc. No. 123) as to Claim
1(f)(iii).

### G. NHDOC/NHSP Nurse Olivia Gamelin - Claims 1(g)(i)-(iv) and 2(e)

Johnson's claims against Nurse Gamelin arise from her
alleged: (i) refusal to change Johnson's catheter in June 2017;
(ii) failure to properly treat Johnson for his UTI in August
2017; (iii) refusal to provide Johnson with an adequate number
of disposable catheters in May 2018; and (iv) imposition of
self-catheterization on Johnson in unsanitary conditions.
Johnson also alleges that Nurse Gamelin overmedicated him in
August 2018.  Nurse Gamelin raises various procedural defects in
support of her argument that Johnson failed to properly exhaust
available administrative remedies.

#### 1. Claims (1)(g)(i)-(ii)

Regarding Johnson's first and second claims against Nurse
Gamelin, the undisputed facts demonstrate that Johnson exhausted
his administrative remedies.  As to Claim 1(g)(i), the NHDOC
provided substantive responses to Johnson's June 18, 2017 and
June 22, 2017 Request Slips, which raised concerns about his
catheter not being changed.  See Ex. 1-A to White Decl. (Doc.

41

No. 123-3) at DOC 581, 585.  The NHDOC also provided substantive responses to Johnson's July 3, 2017 and July 5, 2017 Level II Grievances and his July 23, 2017 Level III Grievance, which raised concerns about his catheter not being changed every 30 days.  Id. at DOC 665, 669, 670, 676.

Regarding Claim 1(g)(ii), Dr. Englander provided a substantive response to Johnson's August 22, 2017 Request Slip, which raised concerns about nurses causing Johnson to be in urinary retention.  Id. at DOC 609.  Director Mattis provided a substantive response to Johnson's September 12, 2017 Level II Grievance, which raised concerns about nurses providing inadequate care in response to his UTI in August 2017.  Id. at DOC 685.  Further, the Commissioner's Office received Johnson's Level III Grievance on October 4, 2017, which raised similar concerns, and Director Mattis provided a substantive response. Id. at DOC 693.

Where the NHDOC raised no procedural defects during Johnson's exhaustion efforts as to these claims, the exhaustion defense is waived.  Whatley, 898 F.3d at 1083.  Further, Johnson's grievances provided sufficient detail to allow for investigation as required by PPD 1.16.  Mallory, 659 F. Supp. 2d at 238.  Accordingly, the undisputed facts demonstrate that Johnson exhausted Claims 1(g)(i)-(ii), as required under the PLRA, and the court, therefore, recommends that the district

42

judge deny State Defendants' motion for summary judgment (Doc.
No. 123) as to these claims.

### 2. Claims 1(g)(iii)-(iv) and Claim 2(e)

Regarding Johnson's remaining claims against Nurse Gamelin,
the record contains no Level II or Level III Grievances
concerning Nurse Gamelin's alleged failure to provide Johnson
with disposable catheters in 2018, imposition of self-
catheterization in unsanitary conditions, or overmedication of
Johnson.  As discussed above, however, Johnson testified that he
grieved the alleged 2018 conduct, including the fact that he did
not have an adequate amount of catheters, was exposed to
unsanitary conditions, and was overmedicated.  See Answers to
Interrogs. (Doc. No. 123-4) at 1.

Setting aside Johnson's vague and conclusory assertion that
NHDOC staff stole or destroyed paperwork, Travers, 737 F.3d at
146, the court finds that Johnson's sworn statement about the
conduct that he grieved contains sufficient detail to create a
genuine dispute of material fact as to whether Johnson exhausted
these claims.  See Maraglia, 499 F. Supp. 2d at 96-97.
Moreover, nothing in Johnson's objection directly contradicts
his testimony that he grieved the alleged August 2018 incidents.
Cf. Stow, 2021 WL 1178303, at *12, 2021 U.S. Dist. LEXIS 59384,
at *36.  Accordingly, the court recommends that the district
judge deny State Defendants' motion for summary judgment (Doc.

No. 123) as to Claims 1(g)(iii)-(iv) and Claim 2(e), and that an evidentiary hearing be scheduled to determine whether Johnson grieved these claims.

### H. NHDOC/NHSP Nurse Brad Bowden - Claims 1(h)(i)-(iv)

Johnson's claims against Nurse Bowden arise from his alleged: (i) failure to provide treatment for Johnson's UTI on August 23, 2017; (ii) refusal to provide medical care for Johnson's UTI on August 26, 2017; (iii) refusal to provide Johnson with a sufficient number of disposable catheters in March 2018; and (iv) denial of disposable catheters to Johnson in May 2018.  Nurse Bowden cites various procedural defects in support of his argument that Johnson failed to properly exhaust available administrative remedies.

#### 1. Claims 1(h)(i)-(ii)

As to Johnson's August 2017 claims, the undisputed facts demonstrate that Johnson exhausted his administrative remedies. In particular, the NHDOC responded substantively to Johnson's August 23, 2017 and September 6, 2017 Request Slips, which alleged that Nurse Bowden failed to provide Johnson with necessary alcohol pads and ignored Johnson's UTI.  Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 611, 621.  Further, on September 1, 2017, the NHDOC responded substantively to Johnson's August 26, 2017 Level II Grievance, which referenced Nurse Bowden's refusal to provide Johnson with necessary alcohol

44

pads and a urinary bag.  Id. at NHDOC 678, 681-82.  On September
18, 2017, the Commissioner's Office received Johnson's Level III
Grievance, which raised the same concerns regarding inadequate
medical treatment by Nurse Bowden, and Director Mattis provided
a substantive response.  Id. at DOC 683.

Where the NHDOC identified no procedural defects during
Johnson's exhaustion efforts as to these claims, the exhaustion
defense is waived.  Whatley, 898 F.3d at 1083.  Further,
Johnson's grievances provided sufficient detail to allow for
investigation as required by PPD 1.16.  Mallory, 659 F. Supp. 2d
at 238.  Accordingly, where the undisputed facts demonstrate
that Johnson exhausted Claims 1(h)(i)-(ii), as required under
the PLRA, the court recommends that the district judge deny
State Defendants' motion for summary judgment (Doc. No. 123) as
to these claims.

2. Claims 1(h)(iii)-(iv)

As to Johnson's remaining claims against Nurse Bowden, the
record contains no relevant Level II or Level III Grievances.
As noted above, however, Johnson testified that he submitted
grievances regarding conduct that occurred in 2018, including
the fact that Johnson did not have the necessary amount of
catheters.  See Answers to Interrogs. (Doc. No. 123-4) at 1.

Setting aside Johnson's vague and conclusory assertion that
NHDOC staff stole or destroyed paperwork, Travers, 737 F.3d at

45

146, the court finds that Johnson's sworn statement about the conduct that he grieved contains sufficient detail to create a genuine dispute of material fact as to whether Johnson exhausted these claims.  See Maraglia, 499 F. Supp. 2d at 96-97.  Moreover, nothing in Johnson's objection directly contradicts his testimony that he grieved these alleged 2018 incidents.  Cf. Stow, 2021 WL 1178303, at *12, 2021 U.S. Dist. LEXIS 59384, at *36.  Accordingly, the court recommends that the district judge deny State Defendants' motion for summary judgment (Doc. No. 123) as to Claims 1(h)(iii)-(iv) and that an evidentiary hearing be scheduled to determine whether Johnson grieved those claims.

**I. NHDOC/NHSP Nurse Tina Crissfulli - Claim 1(i)**

Johnson's claim against Nurse Crissfulli concerns her alleged failure to provide Johnson adequate care for his UTI in August 2017.  Nurse Crissfulli argues that Johnson failed to exhaust his administrative remedies due to procedural defects. The court disagrees.

The undisputed facts demonstrate that Johnson raised Nurse Crissfulli's alleged inadequate medical care in his August 26, 2017 Level II Grievance, Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 678, 681-82, and in his September 12, 2017 Level III Grievance.  Id. at DOC 683.  Where the NHDOC provided substantive responses and identified no procedural defects during Johnson's exhaustion efforts as to this claim, the

exhaustion defense is waived.  Whatley, 898 F.3d at 1083.
Further, Johnson's grievances provided sufficient detail to
allow for investigation as required by PPD 1.16.  Mallory, 659
F. Supp. 2d at 238.  Accordingly, where the undisputed facts
demonstrate that Johnson exhausted Claim 1(i), as required under
the PLRA, the court recommends that the district judge deny
State Defendants' motion for summary judgment (Doc. No. 123) as
to this claim.

### J. NHDOC/NHSP Nurse Veronica Paris - Claims 1(j)(i)-(ii)

Johnson's claims against Nurse Paris arise from her
alleged: (i) failure to provide him with alcohol pads to clean
himself in August 2017; and (ii) refusal to help him in
September 2017 when his catheter was blocked and he had a UTI.
Nurse Paris argues that Johnson failed to properly exhaust his
available administrative remedies.  The court agrees.

The undisputed facts demonstrate that there are no Level II
or Level III Grievances that concern these claims against Nurse
Paris in August or September of 2017.[11]  Further, Johnson offers
no evidence to create a genuine dispute of material fact as to
whether he exhausted available administrative remedies as to
these claims.  For reasons noted above, the conclusory

---

[11] As noted above, Johnson's Level II and Level III
Grievances for this time period concerned only conduct by Nurse
Bowden.  See Ex. 1-A to White Decl. (Doc. No. 123-3) at DOC 687,
695.

assertions in Johnson's objection and surreply are insufficient.
See Travers, 737 F.3d at 146.  Where the undisputed facts
demonstrate that Johnson failed to exhaust his administrative
remedies as to Claims 1(j)(i)-(ii), these claims cannot proceed.
The court, therefore, recommends that the district judge grant
State Defendants' motion for summary judgment (Doc. No. 123) as
to these claims.

> **K. NHDOC/NHSP Nurse Jane Dillon - Claims 1(k)(i)-(iii) and 4(a); NHDOC/NHSP Nurse Nancy Clayman - Claim 1(m); NHDOC/NHSP Nurse Karen Carr - Claim 2(b); NHDOC/NHSP Nurse Fallon Marchand - Claim 2(c); NHDOC/NHSP Nurse Martha Barbosa - Claim 2(d); NHSP Capt. Boynton - Claims 1(o), 2(f), and 4(b)(i); NHSP Lt. Lydick - Claims 1(o), 2(f), 4(b)(i), and 6; NHSP Sgt. Turcotte - Claims 2(f) and 4(b)(i)**

Johnson's remaining claims concern conduct that allegedly
occurred in 2018.  State Defendants assert that Johnson failed
to properly exhaust available administrative remedies with
respect to these claims.  While the record contains no Level II
or Level III Grievances concerning these claims, Johnson
testified that he in fact grieved the alleged 2018 conduct.  See
Answers to Interrogs. (Doc. No. 123-4) at 1.  In particular,
Johnson states that he grieved the following alleged conduct:
being overmedicated, correctional officers passing out
medication, the fact that he did not have an adequate amount of
catheters, the fact that he was denied humane conditions, and

that Lt. Lydick threatened to send Johnson back to Florida if Johnson didn't stop grieving his complaints.  Id.

Setting aside Johnson's vague and conclusory assertion that NHDOC staff stole or destroyed paperwork, Travers, 737 F.3d at 146, the court finds that Johnson's sworn statement contains sufficient detail to create a genuine dispute of material fact as to whether he exhausted these claims.  See Maraglia, 499 F. Supp. 2d at 96-97.  Moreover, nothing in Johnson's objection directly contradicts his testimony that he grieved the alleged August 2018 incidents.  Cf. Stow, 2021 WL 1178303, at *12, 2021 U.S. Dist. LEXIS 59384, at *36.

Accordingly, the court finds that there are genuine disputes of material fact as to whether Johnson exhausted these claims, and therefore, the court recommends that the district judge deny State Defendants' motion for summary judgment (Doc. No. 123) as to these claims.  The court further recommends that an evidentiary hearing be scheduled to determine whether Johnson failed to exhaust available administrative remedies.

## IV.  State Law Claims

Excepting Claims 4(a)-(b)(i) and Claim 6, all of Johnson's claims include a cause of action under state law.  As described above, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison,

or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Therefore, under the plain language of the statute, the exhaustion requirement is limited to a plaintiff's federal law claims. See Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 92 n.5 (D. Mass. 2005) (rejecting defendants' contention that the PLRA's exhaustion requirement applies to state law claims based on the plain language of the statute).

Where defendants presented no arguments and cite no authority suggesting that the PLRA exhaustion requirement applies to state law claims, they have not shown that they are entitled to summary judgment with respect to those claims. Thus, the court recommends that the district judge deny the motions for summary judgment (Doc. Nos. 123, 129, 130) as to the state law claims.

## Conclusion

For the foregoing reasons, the district judge should deny Dr. Englander's motion for summary judgment (Doc. No. 129) and Dr. Fetter's motion for summary judgment (Doc. No. 130).

The district judge should grant in part and deny in part State Defendants' motion for summary judgment (Doc. No. 123) as follows. The motion should be granted as to Claim 1(f)(iii) and Claims 1(j)(i)-(ii). The motion should be denied as to Claims

1(c)(i)-(ii); Claim 1(d)(i); Claim 1(e)(i); Claim 1(f)(i)-(ii);
Claim 1(g)(i)-(iv); Claims 1(h)(i)-(iv); Claim 1(i); Claims
1(k)(i)-(iii); Claim 1(m); Claim 1(o); Claims 2(b)-(f); Claims
4(a)-(b)(i); and Claim 6.

Further, if the district judge approves this Report and
Recommendation, the approval order should direct that an
evidentiary hearing be scheduled to determine whether Johnson
exhausted available administrative remedies for: Claims
1(g)(iii)-(iv); Claims 1(h)(iii)-(iv); Claims 1(k)(i)-(iii);
Claim 1(m); Claim 1(o); Claims 2(a)-(f); Claims 4(a)-(b)(i); and
Claim 6.

Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  The fourteen-day period may be extended
upon motion.  Only those issues raised in the objection(s) to
this Report and Recommendation are subject to review in the
district court. See Sch. Union No. 37 v. United Nat'l Ins. Co.,
617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by
such objection(s) are precluded on appeal.  See id.  Failure to
file specific written objections to the Report and
Recommendation within the specified time waives the right to
appeal the district court's order.  See Santos-Santos v. Torres-
Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

August 16, 2024

cc:  Jacob William Johnson, pro se
     Counsel of Record